Wyley W. LOW, Relator,

v.

Honorable Jack R. KING, Respondent.

No. 09–93–142 CV.

Court of Appeals of Texas,
Beaumont.

Dec. 9, 1993.

Jimmy W. Nettles, Beaumont, for relator.

Gerald R. Flatten, Rienstra, Dowell & Flatten, Beaumont, for respondent.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BURGESS, Justice.

Wyley W. Low [Low] petitions this Court for a writ of mandamus compelling Honorable Jack R. King to rescind certain orders and make other orders in a case pending in the 136th District Court and styled No. D–142,393, *Low v. Gulf States Utilities Company* [GSU], the real party in interest. Low sued GSU under a variety of tort and contract theories, alleging they wrongfully disconnected electric power to his residence and billed him for charges incurred by a third party. GSU filed a counterclaim which alleged that when Low applied for electric service he misrepresented the identity and status of the person sharing the residence to avoid paying charges owed by her.

Trial of the case resulted in a mistrial granted for reasons not germane to this proceeding. Low sought dismissal of GSU's counterclaim through plea in abatement, plea to the jurisdiction, and special exceptions; all relief was denied by the trial court. The trial court also denied Low's motion to reconsolidate a previously severed portion of Low's petition.

GSU sought a protective order to prohibit Low from running an advertisement for witnesses in the local paper. On May 26, 1993, the trial court entered a protective order prohibiting Low from "placing and publication of an ad in a newspaper soliciting and requesting information from the public concerning alleged controversies between such customers and [GSU] of the type identical with or similar to those involved in the allegations of the Plaintiff's Petition...." This order was amended on June 29, 1993, to deny the Motion for Protective Order prohibiting

Low from "placing any advertisement in the newspaper seeking the identity and location of witnesses ..." and to grant the motion prohibiting Low from "placing any newspaper or other advertisement soliciting the identity and knowledge of witnesses which contains any indication of the style of the above-numbered cause, or information or report of the specific complaints of the Plaintiff...."

■ Low's original motion for leave to file petition for writ of mandamus was granted only as to the May 26, 1993 order. We granted leave to amend the petition. The amended petition is organized into "points of error" numbered four through seven. Point of error five is a complaint directed to the trial court's August 5, 1993, order denying various Low motions directed towards GSU's counterclaim. The motions include a plea to the jurisdiction, plea in abatement, motion to dismiss, and special exceptions. Point seven also contends the trial court abused its discretion in ruling on the special exceptions. The trial court's orders on all of these motions are incidental rulings for which relator has an adequate remedy by appeal. *Bell Helicopter Textron, Inc. v. Walker,* 787 S.W.2d 954 (Tex.1990) (plea to the jurisdiction); *Abor v. Black,* 695 S.W.2d 564 (Tex. 1985) (plea in abatement); *Hill v. Lopez,* 858 S.W.2d 563 (Tex.App.—Amarillo 1993, orig. proceeding) (special exceptions). Point six contends the trial court abused its discretion in refusing to grant Low's motion to reconsolidate or clarify its order concerning the severance. A refusal to sever has in limited circumstances been subject to mandamus. *U.S. Fire Ins. Co. v. Millard,* 847 S.W.2d 668 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding); *State Farm v. Wilborn,* 835 S.W.2d 260 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding). The Tyler Court of Appeals refused to find an abuse of discretion where the trial court denied a motion to reconsolidate because counsel was not properly notified of the hearing. *State Dept. of Hwys. & Pub. Transp. v. Ross,* 718 S.W.2d 5 (Tex.App.—Tyler 1986, orig. proceeding). In this case the trial court apparently denied the motion on its merits, but in contrast to a situation where a refusal to sever forces a litigant to take inconsistent positions before the jury, we find no reason why relator is deprived of an adequate remedy by appeal. Although relator argues he is too confused to determine which aspects of his suit have been severed into which cause number, he has failed to demonstrate his confusion to this Court. Mandamus will not lie when there is an adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833 (Tex.1992). We find that motion for leave to file was improvidently granted as to the matters raised in designated points of error five, six and seven, and dismiss the petition as to those particular issues.

■ Point of error four urges constitutional arguments under both the United States and Texas Constitutions. We need only to address his complaint under TEX. CONST. art. I, § 8. Two recent cases have dealt with this provision, *Ex parte Tucci,* 859 S.W.2d 1 (Tex. 1993), and *Davenport v. Garcia,* 834 S.W.2d 4 (Tex.1992). The former case caused considerable acrimony among our highest state court while the latter is more on point. *Davenport* dealt with a protective order, characterized as a "gag" order, which prohibited all discussion of a case outside the court room. After an exhaustive review of Texas history, the court reaffirmed prior decisions that prior restraint on expression is presumptively unconstitutional, *Davenport,* 834 S.W.2d at 10, and adopted the following test:

> a 'gag' order in civil judicial proceedings will withstand constitutional scrutiny only where there are specific findings supported by evidence that (1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm.

The court went on to hold that only an imminent, severe harm can justify prior restraint and that harm must be to the judicial process. When applying this test to the orders of May 26 and June 29, they are all violative of TEX. CONST. art. I, § 8.

We are confident Judge King will withdraw all the previous protective orders.

Only if he should fail to do so will the writ of mandamus issue.

WRIT CONDITIONALLY GRANTED.

BROOKSHIRE, Justice, concurring.

At the threshold we are confronted by Article I, section 8 of the Texas Constitution. Article I, section 8, entitled "Freedom of speech and press; libel" generously and liberally provides:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press. In prosecutions for the publication of papers, investigating the conduct of officers, or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence. And in all indictments for libels, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.

Noteworthy and compelling is the language that every person *shall* be at liberty *to speak, write or publish his opinion on any subject.* And no law *shall* ever be passed curtailing the liberty of speech and of the press. The dissent opines that since relator Low chose to invoke the court system, he thereby waived to some substantial degree his guarantees of freedom of speech and press under Article I, section 8. I respectfully disagree with that premise.

The protective, being restrictive, orders entered by the trial court invalidated the relator's constitutional guarantee of free speech and free expression because the restrictive orders constituted an unconstitutional prior restraint upon freedom of speech, freedom of the press, and freedom to publish. The Texas Constitution's grant and guarantee of free speech, free press, and freedom to publish are affirmative and vital grants and guarantees. *See Channel 4, KGBT v. Briggs,* 759 S.W.2d 939, 944 (Tex.1988), (Gonzales, J., concurring).

The Texas Constitution's provision on free speech has been declared to be more expansive than the United States Bill of Rights and the State free speech guarantees are deemed to be broader than the corresponding Federal guarantees. The rights contained in the Texas Bill of Rights possess ample legal grandeur and make meaningful the guarantees of freedom of speech, freedom of the press, freedom to publish, peaceable assembly, and the right to petition the government for grievances. It is especially noteworthy and significant that the language of the Texas Constitution is different from and meaningfully broader than the language of the corresponding Federal provisions. *See City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). The free speech amendment of the Texas Constitution—being unlike the Federal Constitution—affirmatively guarantees that all persons have the right to speak, write or publish their opinions on any subject.

Pursuant to our Texas Constitution, it has been and remains the rule of law to sanction a speaker after, rather than before, such speech occurs. Indeed, the Texas Constitution grants the affirmative right to speak on any subject. Tex. Const. Art. I, § 8. A strong presumption exists in all cases under section 8 that any free speech sanctions or prior restraints are therefore contrary to the Texas Constitution. *See Ex parte Price,* 741 S.W.2d 366, 369 (Tex.1987) (Gonzales, J., concurring). Both legislatively and judicially fashioned prior restraints on free speech are burdened with a massively heavy presumption of unconstitutionality. *Ex parte Tucker,* 110 Tex. 335, 220 S.W. 75 (1920).

I submit that the freedom of speech guarantee is the threshold, paramount issue and inquiry because in this context, it implicates freedom of communication and freedom to publish. Undoubtedly, relator Low could have expressed himself verbally and aired orally his grievances involved in the underlying lawsuit by stating his position on the street corners or other appropriate and proper public places, provided that no breach of the peace occurred nor nuisance existed. And in the exercise of his freedom of speech, Low could have asked his audience for information relevant to his controversies with

Gulf States Utilities Company. And in the exercise of his freedom of speech, expression, and communication, he could have solicited and inquired about the identity and knowledge of any of his hearers who had information. Low had the right to indicate and reveal the style and nature of his case. Although relator is not a professionally trained, graduate-career journalist, the freedom of the press, the freedom to write and publish, and the freedom to petition are precious rights to him. I decline to hold that the freedom of the press and the right to publish are restricted to professional print journalists or media reporters.

As well, I submit, Low could have placed his inquiries upon a portable sign and proceeded up and down the public streets of Beaumont and even stood in the vicinity of the offices of GSU. By like reasoning, I would argue that Low could communicate his complaints and make his inquiries known on a billboard. The portable signs and billboards are forms of speech although those means of expression are not uttered out of the mouth of a human being.

In a labor dispute, the right to picket peacefully and to carry signs on the picket line have their genesis in the freedom of speech guarantee of the Federal constitution. Freedom of speech and of the press are secured by the First Amendment of the United States Constitution against abridgement by the United States. Significantly, these freedoms are among the fundamental personal rights and liberties secured to all persons by the Fourteenth Amendment against abridgement by a state. Judicial district court action has been held to be equivalent to State action. *See and compare Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Ex parte Tucker, supra.* With genuine deference to the well-motivated dissent, or its rationale, could be interpreted as a restriction on peaceful picketing. But, I submit, that even if labor-management disputes, including picketing activities, are hotly contested in court; that, nevertheless, both labor and its members, and management and its executives have a constitutional right to purchase space in newspapers to educate and influence the general public concerning the merits of the work stoppage. These potent forces in our society could not and would not be restrained.

The safeguarding of freedom of press and of speech to the laudable ends that men and women may speak as they think on matters vital to them, and thereby falsehoods and errors may be exposed through the processes of education, discussion, communication, and publication is essential and necessary to free, democratic government. *Thornhill v. Alabama, supra.* The founding fathers of our nation, who wrestled at great personal cost our independence from the British crown, had full confidence in the power and efficacy of free and fearless reasoning and communication of various, numerous ideas and ideals to discover and spread economic and political truth. *Id.*

Erroneous doctrines in many fields, including government, may be refuted and thoroughly discredited by courageous and open exercise of the right of free discussion, communication, and publication.

Then it is a small step or no step at all to communicating and expressing relator's grievances and inquiries through the use of the public press. I maintain that the freedom of the press, in this context, belongs to the private person or the Texas citizen as well as to the editor and publisher of the newspaper. The trial court's orders of May 26, 1993, and June 29, 1993, are prior restraints and such prior restraints on freedom of expression, freedom of speech, and freedom to publish are unconstitutional. The same rule applies to prior restraints involving freedom of the press. Yet this very doctrine of unconstitutionality is consistent with the mandate of our Texas charter recognizing Texans' broad right of freedom of expression. An individual's rights under our State Constitution do not end at the courthouse step; but rather, the courthouse and the district court are the proper fortresses and zealous guardians of those rights.

The Texas Constitution itself provides for an independent grounding to assert a constitutional cause of action wherein a governmental entity or the officials thereof interfere with an individual citizen's rights which are protected by the State constitution. TEX.

CONST. Art. I, § 8 assures that no law shall ever be passed curtailing the liberty of speech or the freedom of the press. Relator's petition for mandamus is based upon the Texas Constitution—but not exclusively so. *See*, Philip J. Pfeiffer & W. Wendell Hall, *Employment and Labor Law*, 43 Sw. L.J. 81, 84 (1989); James C. Harrington, *Free Speech, Press, and Assembly Liberties Under the Texas Bill of Rights*, 68 TEX. L.REV. 1435, 1490 (1990).

Under this record, there is no imminent and irreparable impairment to the judicial process that will deprive either of the litigants of a just resolution of their controversy. The trial court's two restrictive orders do not represent the least restrictive means available to prevent any such imagined harm or detriment.

At voir dire, either party, and certainly the real party in interest here has a full and ample right to question the venirepersons concerning any matter that might be prejudicial to that litigant's rights. If a truly fair and impartial jury cannot be obtained, a change of venue to another county may well be available. Here, the right to air his grievances and inquiries in the public press is but one facet of the same diamond of freedom of speech, freedom of expression, freedom of communication, and freedom to publish.

Texans historically have chosen from olden times to assure all the liberties for which Texans heroically struggled, including a specific guarantee of an affirmative right to speak, to write, and to publish on any subject. And the judiciary of Texas is the stronghold and defender of those State constitutionally guaranteed rights.

It is proper to take judicial notice (in today's television programming) that groups of lawyers acting collectively and other attorneys acting individually through the television media and through announcements have importuned and admonished litigants not to settle their legal matters until those litigants have consulted with a board-certified lawyer in the relevant specialty. These television media announcements are directed at claimants in various stages of their claims negotiations. Under contemporary law, these advocates are not subject to restrictive orders or injunctions. In light of the above, Low cannot be restrained.

At any rate, in the American and Texan traditions, constitutional rights guarantee that all ideas can be expressed in the "market place of ideas" permitting the people to determine the truth. Certainly, GSU can effectively combat any errors or falsehoods published by Low by purchasing equal or greater space in the press or medias.

WALKER, Chief Justice, dissenting.

I suppose this response is best captioned "Dissent," for I do indeed disagree with a conditional granting of mandamus.

I view this case as having far greater, deeper significance than that acknowledged by the majority or by this dissent, for it truly probes that endless circuity of word and thought which perhaps defies meaningful or substantive address. I view the present subject matter as a constitutional law professor's dream of infinite hypotheticals, prefaced by, "suppose that," "what if," and "assuming so and so."

To me the question is a simple one: "During the litigation process does a tribunal have the power to control the judicial process where that control may encumber, repress, restrain or in any way hinder those expected and protected freedoms provided through the First Amendment to the Constitution of the United States of America?"

In our case, relator desires to advertise certain matters through the media. Actually, relator is seeking discovery through the use of advertising. What's wrong with that? Basically, and at first glance, nothing is wrong with that, for this is every American's right, i.e., to freely speak, to have free press, to freely assemble and to freely petition for redress. These freedoms are born out of a concept which free people know as Democracy.

Each of these First Amendment rights enumerated are not just rights, they are precious rights which many thousands of Americans have willingly died to guarantee their perpetual survival. These precious rights are direct offspring of a basic concept

we know as Democracy. In order to preserve the basic concept there must exist a proper balance and perspective between the offspring and their parent, otherwise the concept is hurled headlong into chaotic turmoil, for the offspring, having reached full and uncontrolled maturity now, figuratively, turn to consume the womb.

Maintaining balance is, or else should be, the never ending quest of our system of government. Obviously, for the most part, the balancing is left to that branch of government which we recognize as the Judicial Branch. The case at hand, as I see it, requires us to seek a balancing of Mr. Low's right of free speech to Judge King's authority to control the litigation before him. Mr. Low chose the judicial process to vent his contentions against Gulf States Utilities Company. During the judicial process, Mr. Low also chooses to exercise the fullness of his rights to free speech through the media. Judge King attempted to balance Mr. Low's rights with the judicial process hopefully in the interest of justice to all and for all. Unfortunately, this balancing places Mr. Low's First Amendment right in a squeeze and something has to give.

The majority feels that the Court must yield and that Mr. Low may go hence without restraint. The majority relies upon *Davenport v. Garcia*, 834 S.W.2d 4 (Tex.1992), as the authority. *Davenport* concerned the question of whether a trial court could enter a protective "gag order" to prevent discussion of a case outside the courtroom. The legal significance between a "gag order" and running ads in a newspaper regarding pending litigation are no doubt distinguishably similar.

Hypothetically, suppose that on the morning of jury selection, relator appears at the entrance of the courthouse carrying a sign which reads, "Gulf States Utilities Company has committed grievous acts against Wyley Low." Can Judge King restrain such conduct or is the court left only to a voir dire examination of each juror or possibly a venue transfer?

Since *Davenport* seems to be our compelling guidance holding that prior restraint is presumptively unconstitutional, I must ad-

here, although part (1) of the test is impossible to prove. *Id.*, 834 S.W.2d at 10.

Rather than conditionally granting mandamus, I would abate the present proceedings and send the matter back to Judge King for a *Davenport* hearing.

Respectfully submitted.