In re HOUSTON CHRONICLE
PUBLISHING COMPANY,
Relator.

No. 14–01–00637–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 2, 2001.

Rehearing Overruled Sept. 6, 2001.

William W. Ogden, Houston, for relator.

George J. Parnham, Wendell A. Odom, Jr., Scott A. Durfee, Houston, for respondents.

Panel consists of Justices YATES, HUDSON and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

The Houston Chronicle Publishing Company (the "Houston Chronicle"), relator, seeks writ of mandamus to compel the 230th District Court of Harris County, Texas, to set aside a gag order entered in Cause Number 880205, *The State of Texas v. Andrea Pia Yates*. The order restrains trial counsel, defendant and certain witnesses from making extrajudicial statements to the media regarding the pending *Yates* criminal prosecution. The trial court has indirectly denied the Houston Chronicle access to those trial participants; however, we hold the order, as written, does not infringe on freedom of the press under the First Amendment. Accordingly, we deny the petition for writ of mandamus.

## I. Background

In an undeniably tragic episode, Andrea Pia Yates was charged with the drowning deaths of her five small children, ranging in age from seven years to six months. It is alleged that Yates, while suffering from a severe form of post-partum depression known as post-partum psychosis, drowned her children in a bathtub at the family's suburban Houston home. Yates has recently been charged with the capital murder of three of the children. In her response brief, Yates admits that facts relating to a "confession" had been leaked to the press and information was being disseminated regarding her state of mind shortly before or at the time of the offense. The case garnered considerable media attention both in Houston and across the nation, with extensive reports, statements from the parties, counsel and other individuals. The citizens of Harris County, Texas have been inundated by newspaper, radio, television and internet reports.

It was this maelstrom of media attention that prompted the Honorable Belinda Hill, judge of the 230th District Court of Harris County, Texas, to enter the gag order. According to the record, Judge Hill initially was not inclined to grant a gag order, electing instead to admonish counsel for both sides that she intended to try the case in court, not in the press. Evidently, the parties did not heed the warning. Judge Hill became concerned that counsels' apparent willingness to continue engaging in media interviews would interfere with the defendant's right to a fair and impartial jury. In chambers, she presented counsel with a proposed gag order and requested suggestions for modifications. At the subsequent hearing in open court and on the record, Judge Hill took judicial notice of the fact that comments and opinions were being expressed to the media by the lawyers for both sides. She further noted that the media was reporting statements allegedly made by the defendant.

Counsel for the Houston Chronicle was present in the courtroom during this hearing, and requested opportunity to be heard regarding entry of the gag order. Judge Hill noted, however, that the Houston Chronicle was neither a party to the criminal proceedings nor a subject of her gag order. Judge Hill declined to entertain the Houston Chronicle's objections at that particular time; however, she indicated a willingness to visit with counsel after the hearing. The record does not reflect any further action taken or modifications sought by relator or either party prior to the date relator filed its petition for writ of mandamus.

In its petition, the Houston Chronicle alleges that the gag order is an unconstitutional restraint on its ability to gather news because it effectively denies access to trial participants. In particular, relator contends the order was entered without

specific findings supported by evidence that such action was necessary to prevent imminent or irreparable harm to the judicial process. Also, relator questioned whether the trial court considered less restrictive alternatives. In her response, filed as a real party in interest, Andrea Pia Yates agrees that proper procedures were not followed before Judge Hill entered the order; however, she has not requested that we set aside the order as a violation of her own rights or interests. The State of Texas, as a real party in interest, also filed a response, contending that the Houston Chronicle has no standing to object to the order. Prior to our ruling on the merits of relator's arguments, we must address whether relator's complaints are the proper subject of a mandamus proceeding.

## II.  Mandamus Standard of Review

■ Mandamus is the proper remedy to correct a clear abuse of discretion by the trial court when relator has no adequate legal remedy. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). To be entitled to mandamus relief, a relator must have a justiciable interest in the underlying controversy. *Terrazas v. Ramirez*, 829 S.W.2d 712, 722 (Tex.1991). The Houston Chronicle has a justiciable interest in the gag order because it limits access to certain sources of information. A relator need not be a party to the underlying litigation or proceedings in order to seek mandamus relief. *Id.* at 723. While it has been held that mandamus is not available to compel an action which has not first been demanded and refused; *see Axelson v. McIlhany*, 798 S.W.2d 550, 556 (Tex.1990); we do not find that the Hous-

ton Chronicle was required to seek modification of the order below prior to filing its petition for writ of mandamus. *See Terrazas* at 724–25. Contrary to the State's position, nothing in the record suggests that Judge Hill intended to include the Houston Chronicle as a party. Relator has no adequate remedy at law in regards to the subject order; therefore its petition for writ of mandamus was procedurally correct.

Having determined that a mandamus proceeding is proper under these circumstances, we next address whether the Houston Chronicle has standing to complain of the gag order to which it is not a party.

## III.  Standing

■ The threshold question of whether relator has standing to attack a gag order to which it is neither a party nor the direct subject of restraint is one of apparent first impression for our Texas courts. In *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472–74, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the Supreme Court held that "standing" requires a party to allege (1) a personal injury in fact, (2) a violation of its own rights, not those of a third party, (3) that the injury falls within the zone of interests protected by the constitutional guarantee involved, (4) that the injury is traceable to the challenged act, and (5) that the courts can grant redress for the injury. According to our survey of pertinent case law, a majority of courts have concluded that the media does have limited standing to raise the issue under these guidelines [1].

---

1. In *Radio & Television News Association v. United States District Court*, 781 F.2d 1443, 1446 (9th Cir.1986), the Ninth Circuit held that in complaining of a gag order that restricted the media's access to trial partici-

pants by restraining those participants, the media demonstrated a sufficient stake in the controversy to establish standing to raise freedom of the press concerns under the First Amendment. In *Dow Jones & Company, Inc.*

■ Applying the standing test set forth in *Valley Forge Christian College, supra,* we note that relator has been "injured" in that the order restricts some of its news sources or potential sources. This violation, if found to exist, pertains to relator's own rights, and the injury falls within the zone of interests protected by the First Amendment. We hold relator has standing because it has asserted an interest that is at least "arguably" protected by the First Amendment.

Although the Houston Chronicle claims in general terms that the order is an unconstitutional prior restraint, it has not briefed the specific issue of whether a gag order constitutes a prior restraint of a newspaper's First Amendment rights when the order effectively denies media access to trial participants *by restraining the trial participants.* We will address this question because it is pivotal to our disposition of relator's petition and significant to the jurisprudence of our state.

## IV. Right of Access to Trial Participants

■ As with the issue of standing, Texas courts have not yet determined whether constitutional rights are infringed by a gag order that does not directly restrain the media but limits the actions of trial participants. Our courts have previously addressed the issue of balancing First Amendment rights of the media with Sixth Amendment rights of the defendant when an order *directly* restrains the media. *See, e.g. Star–Telegram, Inc. v. Walker,* 834 S.W.2d 54 (Tex.1992) (holding that trial court may not issue a protective order to prohibit a newspaper from publishing information already disclosed in open

court); *San Antonio Express–News v. Roman,* 861 S.W.2d 265 (Tex.App.—San Antonio 1993, orig. proceeding) (striking down gag order which prohibited media from disseminating identities of testifying minors who were identified in open court). It is undisputed that Judge Hill's order neither denies the Houston Chronicle access to the criminal proceedings nor restricts dissemination of any information. Therefore, we must determine whether the Houston Chronicle has a constitutional right to interview or interrogate trial participants.

■ In *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 576, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the Supreme Court affirmed the First Amendment "right of access" or "right to gather information" granted to the media regarding criminal trials. The Court described that right, however, as only a right to sit, listen, watch and report. The press has no right to information about a trial superior to that of the general public. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 609, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). In short, the media's right to gather information during a criminal trial is no more than a right to attend the trial and report on their observations. *See Sioux Falls Argus Leader v. Miller,* 610 N.W.2d 76 (S.D.2000) (holding that gag order on trial participants did not violate media's First Amendment rights); *KPNX Broadcasting Co. v. Superior Court,* 139 Ariz. 246, 678 P.2d 431, 439–42 (1984) (holding that limitations on the media's ability to interview trial participants did not violate the First Amendment). *See Pell v. Procunier,* 417

---

*v. Simon,* 842 F.2d 603, 606 (2nd Cir.1988), the Second Circuit agreed with the Ninth Circuit's holding, and ruled that the media had standing to complain of a similar gag order restraining trial participants from speaking to the press. *See also, Pansy v.*

*Borough of Stroudsburg,* 23 F.3d 772, 777 (3rd Cir.1994); *Davis v. East Baton Rouge Parish School Board,* 78 F.3d 920, 926–27 (5th Cir. 1996); *Journal Publishing Co. v. Mechem,* 801 F.2d 1233, 1235 (10th Cir.1986); *CBS Inc. v. Young,* 522 F.2d 234, 238 (6th Cir.1975).

U.S. 817, 829–35, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (in holding that freedom of the press was not infringed by government restrictions on interviews with prison inmates, the Court rejected media argument of "right of access to the sources of what is regarded as newsworthy information").

After considering the evidence and arguments offered by relator and all interested parties, we hold that Judge Hill's order prohibiting attorneys of record and other trial participants from communicating with the media does not violate the Houston Chronicle's First Amendment rights. Accordingly, we join the majority of jurisdictions that have refused to expand the media's First Amendment rights beyond what has been outlined by the Supreme Court.

## V. The Gag Order

■ In regards to the form and substance of the gag order, the Houston Chronicle raises the following complaints: 1) the order was entered without specific findings supported by evidence; 2) the order was not essential to prevent imminent or irreparable harm to the judicial process, and 3) the trial court failed to consider less restrictive alternatives prior to entering the order.

We have considered, respectively, these complaints after a careful review of Judge Hill's findings and order, which are recited verbatim:

> This Court has a duty to preserve the defendant's right to a fair trial by an impartial jury and, if possible, to ensure that potential jurors will not be prejudiced by pretrial publicity. The Court is also mindful of the First Amendment rights of the parties, counsel for the parties, the media, as well as the Open Courts Provision of the Texas Constitution. In efforts to balance these sometimes competing interests, courts have found that prior restraint may be imposed only in extraordinary circumstances, and only if there is the threat of imminent, severe harm. Accordingly, before issuing a gag order, a court must find that extensive media coverage will harm the judicial process.
>
> This Court takes judicial notice of
>
> 1) the unusually emotional nature of the issues involved in this case;
> 2) the extensive local and national media coverage this case has already generated; and
> 3) the various and numerous media interviews with counsel for the parties that have been published and broadcast by local and national media.
>
> The Court FINDS that counsels' willingness to give interviews to the media would only serve to increase the volume of pre-trial publicity.
>
> The Court FINDS that if counsel for the parties continue to grant interviews to the media, the pre-trial publicity will interfere with the defendant's right to a fair trial by an impartial jury.
>
> The Court FURTHER FINDS that no less restrictive means exists to treat the specific threat to the judicial process generated by this pre-trial publicity.
>
> The Court FURTHER FINDS that an order restricting extra-judicial commentary by counsel for the parties is necessary to preserve all venue options and a delay in proceedings would not lessen the publicity generated by this case.
>
> Accordingly, in its sound discretion and in light of the relevant facts and circumstances of this particular case, the Court ORDERS, ADJUDGES and DECREES that prior to and during the trial of this case
>
> 1. All attorneys involved in this case shall strictly adhere to the letter

and spirit of the provisions of the Texas Code of Professional Responsibility governing comments to the media. Specifically, all attorneys shall refrain from making "extrajudicial statements that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.07, *REPRINTED IN* TEX. GOV'T. CODE, tit. 2 subtit. G app. A (TEX. STATE BAR R. art. 10 sec. 9).

2. All attorneys, their staffs, and law enforcement officers involved in this case shall not discuss this case with the media.

3. Witnesses shall not discuss this case with the media when they have *previously* given statements:

    a. to law enforcement personnel,

    b. to representative of the District Attorney's Office; or

    c. who have testified in investigative or adjudicative proceedings.

4. Witnesses who give statements to law enforcement personnel, representatives of the District Attorney's Office, or who testify in investigative or adjudicative proceedings *after the date of entry* of this order shall not discuss this case with the media.

5. This order shall not be interpreted to prohibit attorneys from communicating with the parties in order to prepare for trial, nor shall it be interpreted to prohibit the third parties from attending any live sessions before the Court or from publishing any information

they have already obtained or may obtain in the future. The term "third parties" includes any person or organization, not a party, not an attorney for a party, or not a person employed by the parties or attorneys for the parties for the purposes of assisting in this litigation.

This Court shall entertain reasonable requests to modify this Order as the need arises.

SIGNED June 26, 2001

[Judge Belinda Hill]

The Houston Chronicle argues that the order was entered without specific findings supported by evidence, and that the circumstances described by Judge Hill do not establish the prerequisite imminent and irreparable harm to the judicial process. We disagree with relator's contentions. Clearly, Judge Hill made specific findings of fact supported by judicial notice of obvious circumstances. Also, she took judicial notice of the "emotional nature" and "extensive local and national media coverage". Under TEX. R. EVID. 201(c), a trial court has discretion to take judicial notice of facts, whether requested or not. We find Judge Hill took judicial notice of obvious circumstances posing potential and actual threats to Yates' Sixth Amendment rights and that such evidence was sufficient to support her order. Contrary to the Houston Chronicle's position, "imminent and irreparable harm to the judicial process" has not been recognized by our state's courts as the applicable standard for reviewing complaints raised by a party who is not restrained by the gag order. Relator's reliance on *Davenport v. Garcia,* 834 S.W.2d 4 (Tex.1992), is misplaced, as the party attacking the gag order therein was directly restrained by the order. In absence of supporting guidelines from our

supreme court, we decline to extend *Davenport* to the facts of this proceeding.

 Lastly, relator's contention that Judge Hill failed to consider less restrictive alternatives is not supported by the record. Prior to the hearing, she had admonished counsel for both sides that the case should be tried to the court, not in the media. She further noted that counsel continued to give interviews and make comments to the media, potentially jeopardizing defendant's rights. Judge Hill explained in her order that no less restrictive means existed to deal with this obvious threat to the judicial process.

## VI. Conclusion

 While we believe freedom of expression must, under certain circumstances, yield to a defendant's Sixth Amendment right to a fair trial, we are not unmindful of the great contribution the press has made to society and our government. Justice Southerland aptly described this sentiment in *Grosjean v. American Press Co.*, 297 U.S. 233, 250, 56 S.Ct. 444, 80 L.Ed. 660 (1936):

> The newspapers, magazines, and other journals of the country, it is safe to say, have shed and continue to shed, more light on the public and business affairs of the nation than any other instrumentality of publicity; and since informed public opinion is the most potent of all restraints upon misgovernment, the suppression or abridgement of the publicity afforded by a free press cannot be regarded otherwise than with grave concern.... A free press stands as one of the great interpreters between the government and the people. To allow it to be fettered is to fetter ourselves.

Notwithstanding our acknowledgment of the importance of a free press, we have concluded that Judge Hill exercised her discretion reasonably, without infringing on relator's First Amendment rights. We find no abuse of discretion; therefore, relator's petition for writ of mandamus is denied.