IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-07-00015-CR

 

In re
Anthony Charles Graves

 

 



Original Proceeding

 

 



Opinion



 








          Anthony Charles Graves seeks a writ of
mandamus compelling Respondent, the Honorable Reva L. Towslee-Corbett, sitting
as judge of the 21st District Court of Burleson County,[1]
to set aside a gag order Respondent entered during pretrial proceedings in Graves’s retrial for capital murder.  We will conditionally grant the requested relief.

Background

          In 1994, a Brazoria County jury convicted Graves of capital murder and assessed the death penalty as punishment.[2] 
The Court of Criminal Appeals affirmed Graves’s conviction in an unpublished
opinion.  See Graves v. State, No. 72,042 (Tex. Crim. App. Apr. 23, 1997)
(not designated for publication).  The Fifth Circuit ultimately vacated Graves’s conviction because of a Brady violation.  See Graves v. Dretke, 442
F.3d 334, 344-45 (5th Cir.), cert. denied, ___ U.S. ___, 127 S. Ct. 374, 166 L. Ed. 2d 253 (2006).  Graves now awaits retrial in Burleson County.

          In a September 2006 hearing,
Respondent advised the parties that she was contemplating the issuance of a gag
order.  She later mailed the parties a proposed gag order which was briefly taken
up at an October 30 hearing.  At this hearing, Graves’s counsel advised
Respondent that he had not received a copy of the proposed order. 
Nevertheless, counsel was apparently aware of the order because he had also
filed written objections to it.  Respondent advised that she was aware of
counsel’s objections but believed that order to be sufficiently tailored to
satisfy any constitutional concerns.

          One month later, Respondent signed a
“Restrictive and Protective Order.”  The order recites that Respondent considered:

1.                 
The prior proceeding in this
cause of action, and other related actions of which the Court takes judicial
notice;

 

2.                 
The pre-trial publicity
which has already occurred in this cause, which includes local and national
newspaper coverage, of which the Court takes judicial notice;

 

3.                 
The rulings and opinions
which set out the inherent power of the Court to control its own proceedings,
and to assure that a fair trial is provided for the State and the Defendant in
this cause;

 

          Whereupon the Court does find that it
is necessary to enter this Restrictive Order to protect and provide for a fair
and impartial trial in this cause of action.

 

Items 10 and 11 of the order are the provisions
of primary concern here.  They state:

10.             
Nothing except that which
occurs in open court, adduced only in evidence and in argument, may be
disseminated.

 

11.             
No party to this action, nor
any attorney connected with this case as defense counsel or prosecutor, nor any
other attorney, nor any judicial officer or employee, nor chief of police or
sheriff, nor any agent, deputy or employee of such persons nor any grand juror,
nor any witness having appeared before the Grand Jury or summoned by request or
subpoena to testify in this trial, shall release or authorize the release for
public dissemination of any matters relating to this case, except that which
has been adduced into evidence and in argument in open court.

 

Said persons shall not express, outside of
court, an opinion or make any comment for public dissemination as to the
weight, value, or effect of any evidence as tending to establish guilt or
innocence.

 

Said persons also shall not make any statements
outside of court as to the nature, substance or effect of any testimony that
has been given.

 

Said persons also shall not make any statements
as to the [identity] of any prospective witness, or his or her probable
testimony, or the effect thereof.

 

Said persons also shall not make any
out-of-court statement as to the nature, source, or effect any purported
evidence alleged to have been accumulated as [a] result of the investigation of
this matter.

 

Said persons also shall not make any statements
as to the content, nature, substance, or effect of any testimony which may be
given in any proceeding related to this matter, except that a witness may
discuss any matter with any attorney of record in this case.

 

This Order does not include any of the
following:

 

1.                 
Factual statements of the
accused person’s name, age, residence, occupation and family status.

 

2.                 
The time and place of the
arrest, the identity of the arresting officer’s agency.

 

3.                 
The nature and text of the
charge as reflected in the indictments and public records.

 

4.                 
Quotations from, or
reference without comment to, public records of the Court in the case, and to
other public records heretofore disseminated to the public.

 

5.                 
The scheduling and result of
any stage of the judicial proceeding held in open court in an open and public
session.

 

6.                 
A request for assistance in
obtaining information.

 

7.                 
Any information as to any
person not in custody who is sought as a possible suspect or witness.

 

8.                 
A request for assistance in
obtaining evidence or the names of possible witnesses.

 

          Graves contends in his mandamus
petition that this order constitutes an unconstitutional prior restraint on his
right of free speech under both the state and federal constitutions.  After
considering the petition, the Court sent notice to Respondent and to the
prosecutor requesting a response.  See Tex. R. App. P. 52.4.  Respondent
filed a brief, two-page response explaining in essence that she believes the
order is “necessary and appropriate” to prevent “imminent and irreparable harm
[which] could taint the potential jury pool.”  The prosecutor sent a letter to
the Clerk of this Court advising that the prosecution would not be filing a
response, that the prosecution has “no opposition” to the gag order, and that
the prosecution believes the order to be constitutional.

Mandamus Principles

          In a criminal proceeding, “[m]andamus
is available only if the relator can demonstrate that: 1) he has no other
adequate remedy at law; and 2) under the relevant law and facts, the respondent
‘clearly abused’ his [or her] discretion or the act sought to be compelled is ‘purely
ministerial.’”  State ex rel. Rosenthal v. Poe, 98 S.W.3d 194, 215 (Tex.
Crim. App. 2003) (orig. proceeding); accord DeLeon v. District Clerk of Lynn County, 187 S.W.3d 473, 474 (Tex. Crim. App. 2006) (orig. proceeding) (per curiam).

Article I, Section 8

          Graves first contends that the gag
order violates Article I, section 8 of the Texas Constitution, which provides
in pertinent part:

          Every person shall be at liberty to
speak, write or publish his opinions on any subject, being responsible for the
abuse of that privilege; and no law shall ever be passed curtailing the liberty
of speech or of the press.

 

 Tex.
Const. art. I, § 8.

          Provisions of the Texas Constitution
which have analogues in the federal constitution are generally interpreted to
have the same meaning.  The Texas Constitution should be interpreted as
providing broader protection than its federal counterpart only if such an
interpretation has “firm support in state history or policy.”  Cobb v. State,
85 S.W.3d 258, 267-68 (Tex. Crim. App. 2002); accord Ex parte Lewis, No.
PD-0577-05, 2007 WL 57823 passim (Tex. Crim. App. Jan. 10, 2007).  Thus,
the Texas Constitution should be interpreted as providing rights not found in
the federal constitution “only when unique aspects of Texas history,
jurisprudence, or law support that separate interpretation.”  Cobb, 85
S.W.3d at 268.

          The Supreme Court of Texas conducted
just such an analysis with regard to article I, section 8 in Davenport v.
Garcia. 834 S.W.2d 4 (Tex. 1992) (orig. proceeding).  The Court traced the
unique history of freedom of speech and expression in Texas from the years
before Texas independence up to the drafting of our current state constitution
in 1876.  Id. at 7-8.  The Court also considered prior decisions of the
Supreme Court of Texas and of the Court of Criminal Appeals suggesting that the
Texas Constitution provides broader protection for speech than the First
Amendment or holding that the provisions of article I, section 8 had been
violated.  Id. at 8-9.  After conducting this analysis, the Court concluded
that article I, section 8 “provides greater rights of free expression than its
federal equivalent.”  Id. at 10.

          The Court held that the gag order in that
case was an unconstitutional prior restraint on the “free expression” guarantee
of article I, section 8 and developed the following test to determine whether a
prior restraint on expression violates this provision:

          Since the dimensions of our
constitutionally guaranteed liberties are continually evolving, today we build
on our prior decisions by affirming that a prior restraint on expression is
presumptively unconstitutional.  With this concept in mind, we adopt the
following test: a gag order in civil judicial proceedings will withstand
constitutional scrutiny only where there are specific findings supported by
evidence that (1) an imminent and irreparable harm to the judicial process will
deprive litigants of a just resolution of their dispute, and (2) the judicial
action represents the least restrictive means to prevent that harm.

 

Id.

          The Court has consistently declined to
expand its holding in Davenport.  See, e.g., Tex. Dep’t of Transp. v.
Barber, 111 S.W.3d 86, 105-06 (Tex. 2003); Operation Rescue-Nat’l v.
Planned Parenthood of Houston & Se. Tex., Inc., 975 S.W.2d 546, 557-60
(Tex. 1998).  However, Davenport continues to be the applicable law in
cases involving a prior restraint.  See Marketshare Telecom, L.L.C. v.
Ericsson, Inc., 198 S.W.3d 908, 916-18 (Tex. App.—Dallas 2006, no pet.); Tex. Mut. Ins. Co. v. Surety Bank, N.A., 156 S.W.3d 125, 128 (Tex. App.—Fort Worth 2005, no pet.); James v. City of Houston, 138 S.W.3d 433, 440-41
(Tex. App.—Houston [14th Dist.] 2004, no pet.); Brammer v. KB Home Lone
Star, L.P., 114 S.W.3d 101, 107 (Tex. App.—Austin 2003, no pet.).

          The cases in which this Court has held
the Texas Constitution to create a higher standard than the First Amendment
have involved prior restraints in the form of court orders prohibiting or
restricting speech.  Our opinion in Davenport emphasized the literal
text of our state constitutional guarantee in applying a heightened scrutiny to
prior restraints.  Because of the Texas provision's phrasing, “it has been and
remains the preference of this court to sanction a speaker after, rather than
before, the speech occurs.”  As Davenport explained, “Responsibility for
the abuse of the privilege is as fully emphasized by [Article I, Section 8’s] language
as that the privilege itself shall be free from all species of restraint. . . .
Punishment for the abuse of the right, not prevention of its exercise, is what
the provision contemplates.”

 

Comm’n for Lawyer Discipline v. Benton, 980 S.W.2d 425, 434-35 (Tex. 1998) (quoting Davenport , 834 S.W.2d at 9) (other citations omitted).

          And while the cases cited thus far have
all been civil proceedings, Davenport has also been applied at least
once to a gag order issued in a criminal case.  See San Antonio Express-News
v. Roman, 861 S.W.2d 265, 267-68 (Tex. App.—San Antonio 1993, orig.
proceeding).  The Court of Criminal Appeals often relies on the decisions of
the Supreme Court of Texas when addressing matters of state constitutional
law.  See, e.g., Luquis v. State, 72 S.W.3d 355, 364-65 (Tex. Crim. App.
2002); Ex parte Mitchell, 977 S.W.2d 575, 580 (Tex. Crim. App. 1997); Clewis
v. State, 922 S.W.2d 126, 131 (Tex. Crim. App. 1996).  The Supreme Court reciprocates. 
See Davenport, 834 S.W.2d at 14 (“We give thoughtful consideration to
that court’s analysis in part to avoid conflicting methods of constitutional
interpretation in our unusual system of bifurcated highest courts of appeal.”);
see also Yanes v. Sowards, 996 S.W.2d 849, 852 (Tex. 1999) (per curiam). 
Therefore, we shall apply Davenport in this case.

          In some cases raising related federal
and state constitutional claims, the Supreme Court has chosen to address the
federal claim first, but in others it began with the state claim.  See
Bentley v. Bunton, 94 S.W.3d 561, 579 (Tex. 2002).  However, “[n]o rigid
order of analysis is necessary,” particularly when a party does not argue “that
differences in state and federal constitutional guarantees are material to the
case.”  Id.  Here, because Graves argues that article I, section 8
provides a greater level of protection than the First Amendment and because the
case law supports this contention, we begin with his claim under the state
constitution.

Judicial Notice

          Respondent stated two “findings” in
her order which serve as the primary factual basis for the order:

The prior proceeding in this cause of action,
and other related actions of which the Court takes judicial notice; and

 

The pre-trial publicity which has already
occurred in this cause, which includes local and national newspaper coverage,
of which the Court takes judicial notice.

 

Both of these findings are grounded in judicial
notice.  A preliminary issue is whether Respondent appropriately took judicial
notice in this instance.

          Judicial notice may be taken of facts
or law.[3]  See
Watts v. State, 99 S.W.3d 604, 609 (Tex. Crim. App. 2003); 1 Steven Goode et al., Guide to the Texas Rules of Evidence § 201.1 (3d ed. 2002).[4] 
Judicial notice of facts includes adjudicative facts and legislative facts.  See
Emerson v. State, 880 S.W.2d 759, 764-65 (Tex. Crim. App. 1994); Rodriguez
v. State, 90 S.W.3d 340, 359-60 (Tex. App.—El Paso 2001, pet. ref’d); accord
Goode § 201.1.[5] 
As Professor Wellborn explains,

[a]djudicative facts are those to which the law
is applied in the process of adjudication.  They are the facts that normally go
to the jury in a jury case.  They relate to the parties, their activities,
their properties, their businesses.  Legislative facts are the facts which help
the tribunal determine the content of the law and of policy and help the
tribunal to exercise its judgment or discretion in determining what course of
action to take.  Legislative facts are ordinarily general and do not concern
the immediate parties.  In the great mass of cases decided by courts and by
agencies, the legislative element is either absent or unimportant or
interstitial, because in most cases the applicable law and policy have been
previously established.  But whenever a tribunal engages in the creation of law
or of policy, it may need to resort to legislative facts, whether or not those
facts have been developed on the record.

 

Goode § 201.2 (quoting 2 Kenneth Culp Davis, Administrative Law Treatise § 15.03 (1st
ed. 1958)); accord Emerson, 880 S.W.2d at 765; Rodriguez, 90
S.W.3d at 359-60.

          Adjudicative facts are ordinarily
required to be established by evidence.  Judicial notice is an exception to the
normal requirement of proof, which must be justified by a “high degree of
indisputability.”  Legislative facts, on the other hand, are not normally the
objects of evidentiary proof.  As to them, judicial notice instead of record
evidence is the rule rather than the exception, and indisputability is not
required to justify judicial notice.

 

Goode § 201.2 (footnotes omitted).

          Here, Respondent took judicial notice
of prior proceedings in Graves’s case and related cases and of pretrial
publicity in Graves’s case.  These are adjudicative facts because they are
matters unique to Graves’s prosecution.  See Emerson, 880 S.W.2d at
765; Rodriguez, 90 S.W.3d at 359-60; Goode
§ 201.2.

          Rule of Evidence 201 governs judicial
notice of adjudicative facts.[6]  Tex. R. Evid. 201(a).  Under Rule
201(b),

A judicially noticed fact must be one not
subject to reasonable dispute in that it is either (1) generally known within
the territorial jurisdiction of the trial court or (2) capable of accurate and
ready determination by resort to sources whose accuracy cannot reasonably be
questioned.

 

Id.
201(b); accord Watts, 99 S.W.3d at 610.  “Judicial notice is an
exception to the normal requirement of proof, which must be justified by a
‘high degree of indisputability.’”  Goode
§ 201.2; accord Garza v. State, 996 S.W.2d 276, 279-80 (Tex. App.—Dallas 1999, pet. ref’d).

          A trial court has the discretion to take
judicial notice of adjudicative facts sua sponte.  See Tex. R. Evid. 201(c).  However, “[a]
party is entitled upon timely request to an opportunity to be heard as to the
propriety of taking judicial notice and the tenor of the matter noticed.  In
the absence of prior notification, the request may be made after judicial
notice has been taken.”  Id. 201(e).

          Here, Respondent is clearly authorized
to take judicial notice of prior proceedings in Graves’s case, and we assume
that her decision to take judicial notice of prior proceedings in related cases
is limited to cases litigated in Respondent’s court.  See Turner v. State,
733 S.W.2d 218, 221-22 (Tex. Crim. App. 1987); Brown v. State, 108
S.W.3d 904, 906 (Tex. App.—Texarkana 2003, pet. ref’d).

          Judicial notice of pretrial publicity
may also be appropriate.  See, e.g., In re Houston Chronicle Publ’g Co.,
64 S.W.3d 103, 105 (Tex. App.—Houston [14th Dist.] 2001, orig. proceeding).  The
Houston Chronicle case arose from the “undeniably tragic episode” in
which “Andrea Pia Yates was charged with the drowning deaths of her five small
children.”  Id.

According to the record, Judge Hill initially
was not inclined to grant a gag order, electing instead to admonish counsel for
both sides that she intended to try the case in court, not in the press. 
Evidently, the parties did not heed the warning.  Judge Hill became concerned
that counsels’ apparent willingness to continue engaging in media interviews
would interfere with the defendant’s right to a fair and impartial jury.  In
chambers, she presented counsel with a proposed gag order and requested
suggestions for modifications.  At the subsequent hearing in open court and on
the record, Judge Hill took judicial notice of the fact that comments and
opinions were being expressed to the media by the lawyers for both sides.  She
further noted that the media was reporting statements allegedly made by the
defendant.

 

Id.

          Although the Fourteenth Court
ultimately concluded that a member of the news media could not rely on Davenport when that party was not directly restrained by the trial court’s gag
order, the court concluded that the trial judge appropriately took judicial
notice under those circumstances and made sufficiently specific findings to
support the order.  Id. at 109-110.

          Unlike the order in the Houston
Chronicle case, however, Respondent’s decision to take judicial notice,
particularly regarding pretrial publicity, does not satisfy Rule 201.  First, Respondent
never gave Graves “an opportunity to be heard as to the propriety of taking
judicial notice and the tenor of the matter noticed.”  See Tex. R. Evid. 201(e); Turner,
733 S.W.2d at 223.  Had she given Graves such opportunity, a record could have
been made 








documenting the nature and extent of the
pretrial publicity in Graves’s case and the impact such publicity would have on
the right to a fair trial by an impartial jury.

          In addition, Graves at least
implicitly disputes that pretrial publicity in his case has risen to the level
that it poses “imminent and irreparable harm” to a “fair and impartial trial.” 
In the Houston Chronicle case, the Court of Appeals observed that the
trial court had taken “judicial notice of the ‘emotional nature’ [of the case]
and ‘extensive local and national media coverage’” and held that the trial
court’s findings were “supported by judicial notice of obvious circumstances.” 
 Houston Chronicle Publ’g, 64 S.W.3d at 109.  The local, state,
and national media storm surrounding the Yates case is well documented.

          Conversely, while there has apparently
been extensive pretrial media coverage in Graves’s case,[7]
we cannot say that the nature or impact of that coverage is “not subject to
reasonable dispute.”  See Tex. R.
Evid. 201(b); Watts, 99 S.W.3d at 610; Ho v. State, 856
S.W.2d 495, 499 (Tex. App.—Houston [1st Dist.] 1993, no pet.).  Nor may
judicial notice of these matters be considered justified by a “high degree of
indisputability.”  See Garza, 996 S.W.2d at 279-80; Goode § 201.2.

          For these reasons, we hold that
Respondent abused her discretion by taking judicial notice of these matters.

Specificity of Findings

          Under Davenport, Respondent
must make “specific findings supported by evidence.”  Davenport, 834
S.W.2d at 10; Marketshare Telecom, 198 S.W.3d at 917; accord Grigsby
v. Coker, 904 S.W.2d 619, 620 (Tex. 1995) (orig. proceeding) (per curiam); Tex. Mut. Ins. Co., 156 S.W.3d at 129; Brammer, L.P., 114 S.W.3d at
107.  Here, Respondent’s findings do not satisfy this test.

          In Davenport for example, the
Court identified several shortcomings in the respondent’s order:

The orders fail to identify any miscommunication
that the trial court may have perceived, does not indicate any specific,
imminent harm to the litigation, and offers no explanation of why such harm
could not be sufficiently cured by remedial action.  For instance, had any
miscommunication stemmed from improper statements by Relator, as implied by the
court, the proper response may have been to sanction her conduct.  By stopping
not only the purported miscommunications but any communications, the
broadly worded injunction certainly fails the second part of our test.

 

Davenport,
834 S.W.2d at 11.

          In similar fashion, Respondent failed
to make “specific findings” detailing the nature or extent of the pretrial
publicity in Graves’s case or how the pretrial publicity or the record from his
prior prosecution will impact the right to a fair and impartial jury.  See
Grigsby, 904 S.W.2d at 620; Davenport, 834 S.W.2d at 11; Marketshare
Telecom, 198 S.W.3d at 918; Markel v. World Flight, Inc., 938 S.W.2d
74, 79-80 (Tex. App.—San Antonio 1996, no writ); Low v. King, 867 S.W.2d
141, 142 (Tex. App.—Beaumont 1993, orig. proceeding); San Antonio
Express-News, 861 S.W.2d at 268; cf. Houston Chronicle Publ’g Co.,
64 S.W.3d at 108.

          Accordingly, we hold that the
“Restrictive and Protective Order” issued by Respondent violates Graves’s right to free expression under article I, section 8 of the Texas Constitution.  In
light of this holding, we need not address Graves’s First Amendment claim.

Conclusion

          By this opinion, we do not hold that
the circumstances of Graves’s case will not support the issuance of a gag
order.  Rather, we hold that (1) there is no evidence in the record supporting the
findings necessary for a gag order, (2) the limited record in this case does
not support Respondent’s decision to take judicial notice regarding pretrial
publicity, and (3) Respondent’s order does not contain sufficiently specific
findings for such an order.

          Respondent committed a clear abuse of
discretion by issuing a gag order without making sufficiently specific findings
to support a prior restraint on Graves’s right to free expression under article
I, section 8 of the Texas Constitution.  See Poe, 98 S.W.3d at 215; see
also Grigsby, 904 S.W.2d at 621; Marketshare Telecom, 198 S.W.3d at
920; Markel, 938 S.W.2d at 79-80; Low, 867 S.W.2d at 142; San
Antonio Express-News, 861 S.W.2d at 268.  Graves has no adequate remedy at
law.  See Poe, 98 S.W.3d at 215; see also Grigsby, 904 S.W.2d at
621; Low, 867 S.W.2d at 142; San Antonio Express-News, 861 S.W.2d
at 266-67.

Therefore, we conditionally grant the requested
writ of mandamus.  The writ will issue only if Respondent fails to advise this
Court in writing within fourteen days after the date of this opinion that she has
vacated the Restrictive and Protective Order at issue.

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissenting)

Writ conditionally
granted

Opinion delivered and
filed March 21, 2007

Publish

[OT06]









[1]
          Respondent is the elected judge
of the 335th District Court of Burleson County, but Graves’s prosecution is
pending in the 21st District Court of Burleson County.  See Tex. Gov’t Code Ann. § 24.303 (Vernon
2004).

 





[2]
          Graves was indicted in Burleson County, but venue was transferred to Brazoria County.  See Graves v. Quarterman,
2006 U.S. App. LEXIS 31233, at *3 (5th Cir. Dec. 18, 2006) (not designated for
publication).





[3]
          Rules of Evidence 202, 203, and
204 respectively govern the taking of judicial notice of (1) the laws of other
states, (2) the laws of foreign countries, and (3) local ordinances and
administrative regulations.  Tex. R.
Evid. 202, 203, 204.

 





[4]
          Professor Olin Guy Wellborn, III
is the author of the chapter on judicial notice in the Guide to the Texas
Rules of Evidence.  See Steven Goode et al., Preface to Steven Goode et al., Guide to the Texas Rules of Evidence, at ix (3d ed. 2002).

 





[5]
          Professor Wellborn says that
judicial notice of facts also includes “other ‘non-adjudicative facts’ used ‘in
ways other than formulating laws and rules’ ‘as a part of the judicial
reasoning process.’”  Goode § 201.2
(3d ed. 2002) (quoting Fed. R. Evid.
201(a) advisory committee’s note).  “These include the common general knowledge
of jurors and judges as to such matters as the meanings of words and the
features of the environment, both natural and man-made.”  Id.  Professor
Wellborn provides the following example of a non-adjudicative fact:

 

When a witness in an automobile accident case
says “car,” everyone, judge and jury included, furnishes, from non-evidence
sources within himself, the supplementing information that the “car” is an
automobile, not a railroad car, that it is self-propelled, probably by an
internal combustion engine, that it may be assumed to have four wheels with
pneumatic rubber tires, and so on.

 

Id. (quoting Fed. R. Evid. 201(a) advisory
committee’s note).

 





[6]
          Thus, for judicial notice of
legislative facts, Rule 201 does not apply, including the requirement of
indisputability and the right to a hearing, and judicial notice of legislative
facts is always discretionary.  See Goode
§ 201.2; accord Aguirre v. State, 948 S.W.2d 377, 380 (Tex. App.—Houston [14th Dist.] 1997, pet. ref’d).





[7]
          We note that a French
organization opposed to capital punishment, Association Des Mains Unies pour la
Justice (The Join Hands For Justice Association), maintains a website
documenting Graves’s case.  See http://www.desmainsunies.com.  A link on
this website to “news” compiles links to media reports regarding Graves’s case.  Id. (follow “NEWS” hyperlink).  These reports come predominantly
from the Houston Chronicle, the Austin Chronicle, and KHOU-TV, a Houston television station.  Id.