**In re Anthony Charles GRAVES.**

**No. 10–07–00015–CR.**

Court of Appeals of Texas, Waco.

March 21, 2007.

David Mullin, Mullin Hoard & Brown LLP, Amarillo, Lawrence M. Doss, Mullin, Hoard & Brown, L.L.P., Lubbock, TX, Nicole B. Casarez, University of St. Thomas, Houston, Jeff Blackburn, Lubbock, for appellant.

Patrick C. Batchelor, Corsicana, Julie A. Stone, Asst. Atty. General–State of Texas, Austin, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Anthony Charles Graves seeks a writ of mandamus compelling Respondent, the Honorable Reva L. Towslee–Corbett, sitting as judge of the 21st District Court of Burleson County,[1] to set aside a gag order Respondent entered during pretrial proceedings in Graves's retrial for capital murder. We will conditionally grant the requested relief.

## Background

In 1994, a Brazoria County jury convicted Graves of capital murder and assessed the death penalty as punishment.[2] The Court of Criminal Appeals affirmed Graves's conviction in an unpublished opinion. *See Graves v. State,* No. 72,042, 950 S.W.2d 374 (Tex.Crim.App. Apr. 23, 1997) (not designated for publication). The Fifth Circuit ultimately vacated Graves's conviction because of a *Brady* violation. *See Graves v. Dretke,* 442 F.3d 334, 344–45 (5th Cir.), *cert. denied,* —— U.S. ——, 127 S.Ct. 374, 166 L.Ed.2d 253 (2006). Graves now awaits retrial in Burleson County.

In a September 2006 hearing, Respondent advised the parties that she was contemplating the issuance of a gag order. She later mailed the parties a proposed gag order which was briefly taken up at an October 30 hearing. At this hearing, Graves's counsel advised Respondent that he had not received a copy of the proposed order. Nevertheless, counsel was apparently aware of the order because he had also filed written objections to it. Respondent advised that she was aware of counsel's objections but believed that order to

be sufficiently tailored to satisfy any constitutional concerns.

One month later, Respondent signed a "Restrictive and Protective Order." The order recites that Respondent considered:

1. The prior proceeding in this cause of action, and other related actions of which the Court takes judicial notice;

2. The pre-trial publicity which has already occurred in this cause, which includes local and national newspaper coverage, of which the Court takes judicial notice;

3. The rulings and opinions which set out the inherent power of the Court to control its own proceedings, and to assure that a fair trial is provided for the State and the Defendant in this cause;

Whereupon the Court does find that it is necessary to enter this Restrictive Order to protect and provide for a fair and impartial trial in this cause of action.

Items 10 and 11 of the order are the provisions of primary concern here. They state:

10. Nothing except that which occurs in open court, adduced only in evidence and in argument, may be disseminated.

11. No party to this action, nor any attorney connected with this case as defense counsel or prosecutor, nor any other attorney, nor any judicial officer or employee, nor chief of police or sheriff, nor any agent, deputy or employee of such persons nor any grand juror, nor any witness having

---

1. Respondent is the elected judge of the 335th District Court of Burleson County, but Graves's prosecution is pending in the 21st District Court of Burleson County. *See* Tex. Gov't Code Ann. § 24.303 (Vernon 2004).

2. Graves was indicted in Burleson County, but venue was transferred to Brazoria County. *See Graves v. Quarterman,* 210 Fed.Appx. 429, 429 (5th Cir.2006) (not designated for publication).

appeared before the Grand Jury or summoned by request or subpoena to testify in this trial, shall release or authorize the release for public dissemination of any matters relating to this case, except that which has been adduced into evidence and in argument in open court.

Said persons shall not express, outside of court, an opinion or make any comment for public dissemination as to the weight, value, or effect of any evidence as tending to establish guilt or innocence.

Said persons also shall not make any statements outside of court as to the nature, substance or effect of any testimony that has been given.

Said persons also shall not make any statements as to the [identity] of any prospective witness, or his or her probable testimony, or the effect thereof.

Said persons also shall not make any out-of-court statement as to the nature, source, or effect any purported evidence alleged to have been accumulated as [a] result of the investigation of this matter.

Said persons also shall not make any statements as to the content, nature, substance, or effect of any testimony which may be given in any proceeding related to this matter, except that a witness may discuss any matter with any attorney of record in this case.

This Order does not include any of the following:

1. Factual statements of the accused person's name, age, residence, occupation and family status.

2. The time and place of the arrest, the identity of the arresting officer's agency.

3. The nature and text of the charge as reflected in the indictments and public records.

4. Quotations from, or reference without comment to, public records of the Court in the case, and to other public records heretofore disseminated to the public.

5. The scheduling and result of any stage of the judicial proceeding held in open court in an open and public session.

6. A request for assistance in obtaining information.

7. Any information as to any person not in custody who is sought as a possible suspect or witness.

8. A request for assistance in obtaining evidence or the names of possible witnesses.

Graves contends in his mandamus petition that this order constitutes an unconstitutional prior restraint on his right of free speech under both the state and federal constitutions. After considering the petition, the Court sent notice to Respondent and to the prosecutor requesting a response. *See* Tex.R.App. P. 52.4. Respondent filed a brief, two-page response explaining in essence that she believes the order is "necessary and appropriate" to prevent "imminent and irreparable harm [which] could taint the potential jury pool." The prosecutor sent a letter to the Clerk of this Court advising that the prosecution would not be filing a response, that the prosecution has "no opposition" to the gag order, and that the prosecution believes the order to be constitutional.

### Mandamus Principles

■ In a criminal proceeding, "[m]andamus is available only if the relator can demonstrate that: 1) he has no other adequate remedy at law; and 2) under the relevant law and facts, the respondent

'clearly abused' his [or her] discretion or the act sought to be compelled is 'purely ministerial.' " *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 215 (Tex.Crim.App. 2003) (orig. proceeding); *accord DeLeon v. District Clerk of Lynn County*, 187 S.W.3d 473, 474 (Tex.Crim.App.2006) (orig. proceeding) (per curiam).

## Article I, Section 8

Graves first contends that the gag order violates Article I, section 8 of the Texas Constitution, which provides in pertinent part:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press.

TEX. CONST. art. I, § 8.

▆▆▆ Provisions of the Texas Constitution which have analogues in the federal constitution are generally interpreted to have the same meaning. The Texas Constitution should be interpreted as providing broader protection than its federal counterpart only if such an interpretation has "firm support in state history or policy." *Cobb v. State*, 85 S.W.3d 258, 267–68 (Tex.Crim.App.2002); *accord Ex parte Lewis*, No. PD–0577–05, 2007 WL 57823 *passim* (Tex.Crim.App. Jan. 10, 2007). Thus, the Texas Constitution should be interpreted as providing rights not found in the federal constitution "only when unique aspects of Texas history, jurisprudence, or law support that separate interpretation." *Cobb*, 85 S.W.3d at 268.

The Supreme Court of Texas conducted just such an analysis with regard to article I, section 8 in *Davenport v. Garcia*, 834 S.W.2d 4 (Tex.1992) (orig. proceeding). The Court traced the unique history of freedom of speech and expression in Texas from the years before Texas independence up to the drafting of our current state constitution in 1876. *Id.* at 7–8. The Court also considered prior decisions of the Supreme Court of Texas and of the Court of Criminal Appeals suggesting that the Texas Constitution provides broader protection for speech than the First Amendment or holding that the provisions of article I, section 8 had been violated. *Id.* at 8–9. After conducting this analysis, the Court concluded that article I, section 8 "provides greater rights of free expression than its federal equivalent." *Id.* at 10.

The Court held that the gag order in that case was an unconstitutional prior restraint on the "free expression" guarantee of article I, section 8 and developed the following test to determine whether a prior restraint on expression violates this provision:

> Since the dimensions of our constitutionally guaranteed liberties are continually evolving, today we build on our prior decisions by affirming that a prior restraint on expression is presumptively unconstitutional. With this concept in mind, we adopt the following test: a gag order in civil judicial proceedings will withstand constitutional scrutiny only where there are specific findings supported by evidence that (1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm.

*Id.*

The Court has consistently declined to expand its holding in *Davenport. See, e.g., Tex. Dep't of Transp. v. Barber*, 111 S.W.3d 86, 105–06 (Tex.2003); *Operation Rescue–Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 557–60 (Tex.1998). However, *Davenport* continues to be the applicable law in cases

involving a prior restraint. *See Markets-hare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 916–18 (Tex.App.-Dallas 2006, no pet.); *Tex. Mut. Ins. Co. v. Surety Bank, N.A.*, 156 S.W.3d 125, 128 (Tex. App.-Fort Worth 2005, no pet.); *James v. City of Houston*, 138 S.W.3d 433, 440–41 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101, 107 (Tex.App.-Austin 2003, no pet.).

The cases in which this Court has held the Texas Constitution to create a higher standard than the First Amendment have involved prior restraints in the form of court orders prohibiting or restricting speech. Our opinion in *Davenport* emphasized the literal text of our state constitutional guarantee in applying a heightened scrutiny to prior restraints. Because of the Texas provision's phrasing, "it has been and remains the preference of this court to sanction a speaker after, rather than before, the speech occurs." As *Davenport* explained, "Responsibility for the abuse of the privilege is as fully emphasized by [Article I, Section 8's] language as that the privilege itself shall be free from all species of restraint. . . . Punishment for the abuse of the right, not prevention of its exercise, is what the provision contemplates."

*Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 434–35 (Tex.1998) (quoting *Davenport*, 834 S.W.2d at 9) (other citations omitted).

And while the cases cited thus far have all been civil proceedings, *Davenport* has also been applied at least once to a gag order issued in a criminal case. *See San Antonio Express–News v. Roman*, 861 S.W.2d 265, 267–68 (Tex.App.-San Antonio 1993, orig. proceeding). The Court of Criminal Appeals often relies on the decisions of the Supreme Court of Texas when addressing matters of state constitutional law. *See, e.g., Luquis v. State*, 72 S.W.3d 355, 364–65 (Tex.Crim.App.2002); *Ex parte Mitchell*, 977 S.W.2d 575, 580 (Tex. Crim.App.1997); *Clewis v. State*, 922 S.W.2d 126, 131 (Tex.Crim.App.1996). The Supreme Court reciprocates. *See Davenport*, 834 S.W.2d at 14 ("We give thoughtful consideration to that court's analysis in part to avoid conflicting methods of constitutional interpretation in our unusual system of bifurcated highest courts of appeal."); *see also Yanes v. Sowards*, 996 S.W.2d 849, 852 (Tex.1999) (per curiam). Therefore, we shall apply *Davenport* in this case.

In some cases raising related federal and state constitutional claims, the Supreme Court has chosen to address the federal claim first, but in others it began with the state claim. *See Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex.2002). However, "[n]o rigid order of analysis is necessary," particularly when a party does not argue "that differences in state and federal constitutional guarantees are material to the case." *Id.* Here, because Graves argues that article I, section 8 provides a greater level of protection than the First Amendment and because the case law supports this contention, we begin with his claim under the state constitution.

## Judicial Notice

Respondent stated two "findings" in her order which serve as the primary factual basis for the order:

> The prior proceeding in this cause of action, and other related actions of which the Court takes judicial notice; and

> The pre-trial publicity which has already occurred in this cause, which includes local and national newspaper coverage, of which the Court takes judicial notice.

Both of these findings are grounded in judicial notice. A preliminary issue is whether Respondent appropriately took judicial notice in this instance.

 Judicial notice may be taken of facts or law.[3] *See Watts v. State*, 99 S.W.3d 604, 609 (Tex.Crim.App.2003); 1 STEVEN GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE § 201.1 (3d ed.2002).[4] Judicial notice of facts includes adjudicative facts and legislative facts. *See Emerson v. State*, 880 S.W.2d 759, 764–65 (Tex. Crim.App.1994); *Rodriguez v. State*, 90 S.W.3d 340, 359–60 (Tex.App.-El Paso 2001, pet. ref'd); *accord* GOODE § 201.1.[5] As Professor Wellborn explains,

> [a]djudicative facts are those to which the law is applied in the process of adjudication. They are the facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses. Legislative facts are the facts which help the tribunal determine the content of the law and of policy and help the tribunal to exercise its judgment or discretion in determining what course of action to take. Legislative facts are ordinarily general and do not concern the immediate parties. In the great mass of cases

decided by courts and by agencies, the legislative element is either absent or unimportant or interstitial, because in most cases the applicable law and policy have been previously established. But whenever a tribunal engages in the creation of law or of policy, it may need to resort to legislative facts, whether or not those facts have been developed on the record.

GOODE § 201.2 (quoting 2 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 15.03 (1st ed.1958)); *accord Emerson*, 880 S.W.2d at 765; *Rodriguez*, 90 S.W.3d at 359–60.

> Adjudicative facts are ordinarily required to be established by evidence. Judicial notice is an exception to the normal requirement of proof, which must be justified by a "high degree of indisputability." Legislative facts, on the other hand, are not normally the objects of evidentiary proof. As to them, judicial notice instead of record evidence is the rule rather than the exception, and indisputability is not required to justify judicial notice.

GOODE § 201.2 (footnotes omitted).

 Here, Respondent took judicial notice of prior proceedings in Graves's case

---

**3.** Rules of Evidence 202, 203, and 204 respectively govern the taking of judicial notice of (1) the laws of other states, (2) the laws of foreign countries, and (3) local ordinances and administrative regulations. TEX.R. EVID. 202, 203, 204.

**4.** Professor Olin Guy Wellborn, III is the author of the chapter on judicial notice in the *Guide to the Texas Rules of Evidence. See* Steven Goode et al., *Preface* to STEVEN GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE, at ix (3d ed.2002).

**5.** Professor Wellborn says that judicial notice of facts also includes "other 'non-adjudicative facts' used 'in ways other than formulating laws and rules' 'as a part of the judicial reasoning process.'" GOODE § 201.2 (3d ed.2002) (quoting FED.R.EVID. 201(a) advisory committee's note). "These include the com-

mon general knowledge of jurors and judges as to such matters as the meanings of words and the features of the environment, both natural and man-made." *Id.* Professor Wellborn provides the following example of a non-adjudicative fact:

> When a witness in an automobile accident case says "car," everyone, judge and jury included, furnishes, from non-evidence sources within himself, the supplementing information that the "car" is an automobile, not a railroad car, that it is self-propelled, probably by an internal combustion engine, that it may be assumed to have four wheels with pneumatic rubber tires, and so on.

*Id.* (quoting FED.R.EVID. 201(a) advisory committee's note).

and related cases and of pretrial publicity in Graves's case. These are adjudicative facts because they are matters unique to Graves's prosecution. *See Emerson*, 880 S.W.2d at 765; *Rodriguez*, 90 S.W.3d at 359–60; GOODE § 201.2.

Rule of Evidence 201 governs judicial notice of adjudicative facts.[6] TEX.R. EVID. 201(a). Under Rule 201(b),

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

*Id.* 201(b); *accord Watts*, 99 S.W.3d at 610. "Judicial notice is an exception to the normal requirement of proof, which must be justified by a 'high degree of indisputability.'" GOODE § 201.2; *accord Garza v. State*, 996 S.W.2d 276, 279–80 (Tex.App.-Dallas 1999, pet. ref'd).

▇▇▇ A trial court has the discretion to take judicial notice of adjudicative facts *sua sponte*. *See* TEX.R. EVID. 201(c). However, "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." *Id.* 201(e).

Here, Respondent is clearly authorized to take judicial notice of prior proceedings in Graves's case, and we assume that her decision to take judicial notice of prior proceedings in related cases is limited to cases litigated in Respondent's court. *See Turner v. State*, 733 S.W.2d 218, 221–22 (Tex.Crim.App.1987); *Brown v. State*, 108 S.W.3d 904, 906 (Tex.App.-Texarkana 2003, pet. ref'd).

▇▇▇ Judicial notice of pretrial publicity may also be appropriate. *See, e.g., In re Houston Chronicle Publ'g Co.*, 64 S.W.3d 103, 105 (Tex.App.-Houston [14th Dist.] 2001, orig. proceeding). The *Houston Chronicle* case arose from the "undeniably tragic episode" in which "Andrea Pia Yates was charged with the drowning deaths of her five small children." *Id.*

> According to the record, Judge Hill initially was not inclined to grant a gag order, electing instead to admonish counsel for both sides that she intended to try the case in court, not in the press. Evidently, the parties did not heed the warning. Judge Hill became concerned that counsels' apparent willingness to continue engaging in media interviews would interfere with the defendant's right to a fair and impartial jury. In chambers, she presented counsel with a proposed gag order and requested suggestions for modifications. At the subsequent hearing in open court and on the record, Judge Hill took judicial notice of the fact that comments and opinions were being expressed to the media by the lawyers for both sides. She further noted that the media was reporting statements allegedly made by the defendant.

*Id.*

Although the Fourteenth Court ultimately concluded that a member of the news media could not rely on *Davenport* when that party was not directly restrained by the trial court's gag order, the court concluded that the trial judge appropriately took judicial notice under those

---

6. Thus, for judicial notice of legislative facts, Rule 201 does not apply, including the requirement of indisputability and the right to a hearing, and judicial notice of legislative facts is always discretionary. *See* GOODE § 201.2; *accord Aguirre v. State*, 948 S.W.2d 377, 380 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd).

circumstances and made sufficiently specific findings to support the order. *Id.* at 109–110.

Unlike the order in the *Houston Chronicle* case, however, Respondent's decision to take judicial notice, particularly regarding pretrial publicity, does not satisfy Rule 201. First, Respondent never gave Graves "an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." *See* Tex.R. Evid. 201(e); *Turner*, 733 S.W.2d at 223. Had she given Graves such opportunity, a record could have been made documenting the nature and extent of the pretrial publicity in Graves's case and the impact such publicity would have on the right to a fair trial by an impartial jury.

In addition, Graves at least implicitly disputes that pretrial publicity in his case has risen to the level that it poses "imminent and irreparable harm" to a "fair and impartial trial." In the *Houston Chronicle* case, the Court of Appeals observed that the trial court had taken "judicial notice of the 'emotional nature' [of the case] and 'extensive local and national media coverage'" and held that the trial court's findings were "supported by judicial notice of obvious circumstances." *Houston Chronicle Publ'g*, 64 S.W.3d at 109. The local, state, and national media storm surrounding the Yates case is well documented.

Conversely, while there has apparently been extensive pretrial media coverage in Graves's case,[7] we cannot say that the nature or impact of that coverage is "not subject to reasonable dispute." *See* Tex.R. Evid. 201(b); *Watts*, 99 S.W.3d at 610; *Ho v. State*, 856 S.W.2d 495, 499 (Tex.App.-

Houston [1st Dist.] 1993, no pet.). Nor may judicial notice of these matters be considered justified by a "high degree of indisputability." *See Garza*, 996 S.W.2d at 279–80; Goode § 201.2.

For these reasons, we hold that Respondent abused her discretion by taking judicial notice of these matters.

### Specificity of Findings

Under *Davenport*, Respondent must make "specific findings supported by evidence." *Davenport*, 834 S.W.2d at 10; *Marketshare Telecom*, 198 S.W.3d at 917; *accord Grigsby v. Coker*, 904 S.W.2d 619, 620 (Tex.1995) (orig.proceeding) (per curiam); *Tex. Mut. Ins. Co.*, 156 S.W.3d at 129; *Brammer*, 114 S.W.3d at 107. Here, Respondent's findings do not satisfy this test.

In *Davenport* for example, the Court identified several shortcomings in the respondent's order:

> The orders fail to identify any miscommunication that the trial court may have perceived, does not indicate any specific, imminent harm to the litigation, and offers no explanation of why such harm could not be sufficiently cured by remedial action. For instance, had any miscommunication stemmed from improper statements by Relator, as implied by the court, the proper response may have been to sanction her conduct. By stopping not only the purported miscommunications but *any* communications, the broadly worded injunction certainly fails the second part of our test.

*Davenport*, 834 S.W.2d at 11.

In similar fashion, Respondent failed to make "specific findings" detailing the na-

---

7. We note that a French organization opposed to capital punishment, Association Des Mains Unies pour la Justice (The Join Hands For Justice Association), maintains a website documenting Graves's case. *See* http://www.desmainsunies.com. A link on this website to

"news" compiles links to media reports regarding Graves's case. *Id.* (follow "NEWS" hyperlink). These reports come predominantly from the *Houston Chronicle,* the *Austin Chronicle,* and KHOU–TV, a Houston television station. *Id.*

ture or extent of the pretrial publicity in Graves's case or how the pretrial publicity or the record from his prior prosecution will impact the right to a fair and impartial jury. *See Grigsby*, 904 S.W.2d at 620; *Davenport*, 834 S.W.2d at 11; *Marketshare Telecom*, 198 S.W.3d at 918; *Markel v. World Flight, Inc.*, 938 S.W.2d 74, 79–80 (Tex.App.-San Antonio 1996, no writ); *Low v. King*, 867 S.W.2d 141, 142 (Tex.App.-Beaumont 1993, orig. proceeding); *San Antonio Express–News*, 861 S.W.2d at 268; *cf. Houston Chronicle Publ'g Co.*, 64 S.W.3d at 108.

Accordingly, we hold that the "Restrictive and Protective Order" issued by Respondent violates Graves's right to free expression under article I, section 8 of the Texas Constitution. In light of this holding, we need not address Graves's First Amendment claim.

## Conclusion

By this opinion, we do not hold that the circumstances of Graves's case will not support the issuance of a gag order. Rather, we hold that (1) there is no evidence in the record supporting the findings necessary for a gag order, (2) the limited record in this case does not support Respondent's decision to take judicial notice regarding pretrial publicity, and (3) Respondent's order does not contain sufficiently specific findings for such an order.

Respondent committed a clear abuse of discretion by issuing a gag order without making sufficiently specific findings to support a prior restraint on Graves's right to

free expression under article I, section 8 of the Texas Constitution. *See Poe*, 98 S.W.3d at 215; *see also Grigsby*, 904 S.W.2d at 621; *Marketshare Telecom*, 198 S.W.3d at 920; *Markel*, 938 S.W.2d at 79–80; *Low*, 867 S.W.2d at 142; *San Antonio Express–News*, 861 S.W.2d at 268. Graves has no adequate remedy at law. *See Poe*, 98 S.W.3d at 215; *see also Grigsby*, 904 S.W.2d at 621; *Low*, 867 S.W.2d at 142; *San Antonio Express–News*, 861 S.W.2d at 266–67.

Therefore, we conditionally grant the requested writ of mandamus. The writ will issue only if Respondent fails to advise this Court in writing within fourteen days after the date of this opinion that she has vacated the Restrictive and Protective Order at issue.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

Given the majority's proclivity to abate matters for corrective measures to be taken by the trial court, it causes me to question their motives and reasoning when they fail to do so.[1] *See e.g., Villegas v. Morse*, No. 10–06–00237–CV, 2006 WL 2641000, 2006 Tex.App. LEXIS 8150 (Tex.App.-Waco Sept. 13, 2006, order) (Gray, C.J., dissenting); *Belton v. ConAgra Poultry Co.*, No. 10–05–00339–CV, 2005 WL 3275602, \*1, 2005 Tex.App. LEXIS 10085, \*4–5 (Tex.App.-Waco Nov.30, 2005, no pet.) (Gray, C.J., concurring). Even then, given the language of their conclusion, I would expect a delayed imposition of the

---

1. Upon the agreement of all the members of this Court, oral argument was originally scheduled for this proceeding. It involves serious constitutional questions balancing free speech and the requisites to obtain a fair trial. Oral argument would significantly aid in the disposition of this proceeding. For example, this case is different than those cases cited by the majority which occurred in

large metropolitan areas. Pretrial publicity will impact the jury pool differently. No one will be more aware of that difference than the trial court and the defendant. I believe the majority has failed to recognize these distinctions in the cited authority that oral argument would have allowed us to explore. Nevertheless, without consulting me, a majority of the Court cancelled oral argument.

holding to allow the trial court the opportunity to meet the requirements of their opinion before a fair trial for Graves is put in jeopardy. It is especially troubling that the majority would impose so restrictive of a schedule without the opportunity to cure the perceived problems when the right of the defendant to a fair trial is what weighs in the balance.

The majority recognizes that judicial notice is a substitute for evidence. But they contend that judicial notice was improperly taken because of lack of notice and further that the findings necessary to support the order have not been made. The Court of Criminal Appeals has recently held that when required findings have not been made, we must first abate the appeal so that the required findings can be made. *State v. Cullen,* 195 S.W.3d 696, 700 (Tex. Crim.App.2006); *see also Urias v. State,* 155 S.W.3d 141 (Tex.Crim.App.2004); *Norton v. State,* 156 S.W.3d 668 (Tex.App.-Waco 2005, order).

Likewise, the Texas Supreme Court has recently held that if there is some procedural defect in an appeal, Rule 44.3 requires that we must give the parties notice and opportunity to cure the defect before the judgment is affirmed or reversed. TEX.R.APP. P. 44.3, *Hood v. Wal–Mart Stores, Inc.,* 216 S.W.3d 829 (Tex.2007); *Higgins v. Randall County Sheriff's Office,* 193 S.W.3d 898, 899–900 (Tex.2006). While these decisions may not expressly apply to a criminal mandamus proceeding, the Rules of Appellate Procedure do, and they each are designed to remind us of basic due process; notice and the opportunity to be heard.

And as for the majority's determination that the trial court cannot take judicial notice of certain facts because prior notice was not given; though quoted in their opinion, they neglect the remaining method in which due process can be satisfied in that situation.

In the absence of prior notification, the request [to be heard on the propriety of taking judicial notice] may be made after judicial notice has been taken. [*Goode,*] § 201(e).

Maj. op. at 751. If Graves properly requested the opportunity to be heard, or if the trial court must make more clear its findings of the nature and extent of pretrial publicity and the impact on the right to a fair trial, the way to get that documented would seem to be abatement rather than a mandamus compelling the trial court to set aside her order. *See* TEX. R.APP. P. 44.3; *see also State v. Cullen,* 195 S.W.3d 696 (Tex.Crim.App.2006). *Urias v. State,* 155 S.W.3d 141 (Tex.Crim.App. 2004).

Because the analysis is incomplete, and because, if upon full and proper analysis I concluded the trial court had clearly abused its discretion, I would delay implementation of the order sufficiently to allow the trial court to correct perceived shortcomings in the procedure and findings; I respectfully note my dissent to the Court's conditional grant of the writ of mandamus.[2]

---

**2.** I defer to the majority's decision to issue the opinion without my having the time necessary to conduct the full analysis I would need to reach a final result. This will yield a more timely disposition though the appellate purist, with whom I agree, would argue that disposition in this manner is premature. *See In the Interest of S.A.P.,* 135 S.W.3d 165, 177 (Tex. App.-Waco 2004) (Gray, C.J., dissenting),

*rev'd and remanded,* 156 S.W.3d 574 (Tex. 2005).