WR-83,719-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/6/2015 2:36:27 PM
Accepted 10/6/2015 2:40:06 PM
ABEL ACOSTA
CLERK

RECEIVED IN
COURT OF CRIMINAL APPEALS

October 6, 2015

ABEL ACOSTA, CLERK

**No. WR-83,719-01**

**IN THE**

**TEXAS COURT OF CRIMINAL APPEALS**

**SITTING AT AUSTIN, TEXAS**

_____

**IN RE STATE OF TEXAS EX REL. ABELINO REYNA,**

*RELATOR*

_____

**AMICUS CURIAE BRIEF OF NINE TEXAS DISTRICT ATTORNEYS**

**ON MOTION FOR WRIT OF MANDAMUS**
**CAUSE NO. 10-15-00235-CR**
**FROM THE 10TH COURT OF APPEALS DISTRICT**
**WACO, TEXAS**

**CAUSE NO. 2015-1955-2**
**FROM THE 54TH JUDICIAL DISTRICT COURT OF**
**MCLENNAN COUNTY, TEXAS**

_____

RENE M. PENA
District Attorney
81st Judicial District
State Bar No. 00792752
1327 Third St.
Floresville, Texas 78114
[Tel.] (830) 393-2200
[Fax] (830) 393-2205
[Email]
renepena@81stda.org

## Identity of Parties and Counsel

**Relator**  
Abelino 'Abel' Reyna,  
Criminal District Attorney  
McLennan County, Texas

**Real Party in Interest**  
Hon. Matt Johnson,  
Presiding Judge  
54th Judicial District Court of  
McLennan County, Texas  
501 Washington Avenue, Suite 305  
Waco, Texas 76701

**Respondent**  
Court of Appeals, Tenth District  
501 Washington Avenue, Suite 415  
Waco, Texas 76701

**Real Party in Interest**  
Matthew Alan Clendennen

**Real Party in Interest'sTrial and Appellate Attorney**  
Mr. F. Clinton Broden  
2600 State Street  
Dallas, Texas 75204

**State's Trial Attorneys**  
Mr. Mark Parker  
Mr. Brandon Luce  
Assistant Criminal District  
Attorneys  
219 North 6th Street, Suite 200  
Waco, Texas 76701

**State's Attorneys on Appeal**  
Abelino 'Abel' Reyna  
Criminal District Attorney

Sterling Harmon
Appellate Division Chief
219 North 6th Street, Suite 200
Waco, Texas 76701

# IDENTITY OF AMICUS CURIAE

**Dustin Hugh "Dusty" Boyd**
Coryell County District Attorney
P.O. Box 919
Gatesville, Texas  76528
(254) 865-5911, ext. 2267
(254) 865-5147 (fax)
Email:  dusty.boyd@coryellcounty.org
SBN:  24050317

**Jo'Shea Ferguson-Worley**
Terry County District Attorney
500 West Main, Room 208E
Brownfield, Texas  79316
(806) 637-4984
(806) 637-4874 (fax)
Email:  jworley@terrycounty.org
SBN:  24058993

**Robert Thomas "Rob" Christian**
Hood County District Attorney
1200 West Pearl Street
Granbury, Texas  76048
(817) 579-3245
(817) 579-3247 (fax)
Email:  rchristian@co.hood.tx.us
SBN:  00798106

**Laurie English**
112 Judicial District Attorney
P.O. Box 1187
Ozona, Texas  76942
(325) 392-2025
(325) 392-8415 (fax)
Email:  lke112da@gmail.com
SBN:  24025349

**M. Alan Nash**
Erath County District Attorney
P.O. Box 30
Stephenville, Texas  76401
(254) 965-1462
(254) 965-5543
Email:  da@co.erath.tx.us
SBN:  24027680

**Julie Renken**
Washington and Burleson County District Attorney
100 South Park
Brenham, Texas  77833
(979) 277-6247
(979) 277-6237 (fax)
Email:  jrenken@wacounty.com
SBN:  00794696

**B.J. Shepherd**
220th Judicial District Attorney
P.O. Box 368
Meridian, Texas  76665-0368
(254) 435-2994
(254) 435-2952 (fax)
Email:  bjshepherd4@gmail.com
SBN:  18219500

**DISCLOSURE REGARDING FEES**

Pursuant to Rule 11(c) of the Texas Rules of Appellate Procedure, counsel for amicus curiae represents that no fee has been or will be paid to counsel for preparation of this brief.

## Table of Contents

Identity of Parties and Counsel ..........................................................................ii

Identity of Amicus Curiae ……………………………………………….. iv

Disclosure Regarding Fees ……………………………………………. vi

Table of Contents .............................................................................................vii

TABLE OF AUTHORITIES ...........................................................................ix

STATEMENT OF THE CASE .......................................................................xi

STATEMENT OF FACTS ..............................................................................xi

ISSUES PRESENTED ....................................................................................xi

Summary of Argument ..................................................................................... 1

Argument.............................................................................................................. 1

Does *Davenport v. Garcia* control criminal gag orders?................................. 1

*Davenport* fails to consider competing constitutional guarantees.............. 1

*Davenport* limits itself to considerations of Texas law ................................. 4

Findings Sufficient to Support a Gag Order.................................................. 6

Least Restrictive Means.................................................................................... 9

Options Proposed by the Defense Bar .........................................................10

Conclusion ..........................................................................................................12

Prayer ...................................................................................................................12

Certificate of Compliance.................................................................................14

Certificate of Service ........................................................................14

# TABLE OF AUTHORITIES

**United State Constitution**

*U.S. Const. amend. VI* ……………………………………………………… 2, 4

**State Constitution**

*Tex. Const. Art. I, §8* ……………………………………………………… 1, 2, 4
*Tex. Const. Art. I, §10* ..................................................................................... 2

**Federal Cases**

*Gannett Co., Inc. v. DePasquale,* 443 U.S. 368 (1979) ....................................3, 10

*Gentile v. State Bar of Nevada,* 501 U.S. 1030 (1991) .......................................3, 5

*Nebraska Press Ass'n v. Stuart,* 427 U.S. 539 (1976) ...........................................10

*Nixon v. Warner Communications, Inc.,* 435 U.S. 589 (1978) .............................. 5

*Pell v. Procunier,* 417 U.S. 817(1974) ........................................................ 5

*Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555 (1980).............................. 5

*Sheppard v. Maxwell,* 384 U.S. 333 (1966) .................................................. 3-4, 10

*United States v. Brown,* 218 F.3d 415 (5th Cir. 2000) ...................................5, 10

*United States v. Carmichael,* 326 F. Supp. 2d 1267 (M.D. Ala. 2004) ............... 5

**State Cases**

*Davenport v. Garcia,* 834 S.W.2d 4 (Tex. 1992) ......................................... passim

*In re Benton,* 238 S.W.3d 587 (Tex. App.—Houston [14th Dist.] 2007) ........... 5

*In re Graves,* 217 S.W.3d 744 (Tex. App.—Waco 2007).........................5, 6, 7, 9

*In re Houston Chronicle Pub. Co.,* 64 S.W.3d 103 (Tex. App.—Houston [14th
Dist.] 2001) ............................................................................................... 5

*State v. Redus,* 445 S.W.3d 151 (Tex. Crim. App. 2014) ...................................11

**Statutes**

*Tex. Code Crim. Proc., Art. 44.01* …………………………………………… 11
*Tex. Penal Code, Ch. 37* …………………………………………………… 2

**State Rules**

*Tex. R. App. P. 11(c)* ............................................................................ vi

*Tex. R. App. P. 9.4(e)* ...........................................................................13

*Tex. R. App. P. 9.4(i)*............................................................................13

*Tex. R. App. P. 9.4(i)(1)* .......................................................................13

*Tex. R. Evid. 105* .................................................................................. 2

*Tex. R. Evid. 402* .................................................................................. 2

*Tex. R. Evid. 403* .................................................................................. 2

*Tex. R. Evid. 404* .................................................................................. 2

*Tex. R. Evid. 802* .................................................................................. 2

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW RENE M. PENA, District Attorney for the 81st Judicial District of Texas, and on behalf of eight Texas District Attorneys, and files this Amicus Curiae Brief in Cause Number 83,719-01, *In re State of Texas ex rel. Abelino Reyna*.

The purpose of this amicus curiae brief is to provide the Court with the perspective of Texas prosecutors, particularly in regard to the proper standards which should apply to gag orders in criminal cases, and why the gag order in the case at bar should be upheld.

## STATEMENT OF THE CASE

Counsel for amicus adopts the statement of the case presented in Relator's brief.

## STATEMENT OF FACTS

Counsel for amicus adopts the statement of facts presented in Relator's brief.

## ISSUES PRESENTED

The Court has designated the following issues to be briefed:

1. Is the Texas Supreme Court's holding in *Davenport v. Garcia*, 834 S.W.2d 4 (Tex. 1992), applicable to gag orders in criminal cases?

2. Are findings supporting the gag order in this case sufficiently specific?

3. Is the Tenth Court of Appeals' conditional grant of mandamus relief supported by the law and facts of this case?

## Summary of Argument

1. The Texas Supreme Court's holding in *Davenport v. Garcia*, 834 S.W.2d 4 (Tex. 1992), 834 S.W.2d 4 (Tex. 1992) is not applicable to gag orders in criminal cases.

2. The findings supporting the gag order in this case are sufficiently specific.

3. The Tenth Court of Appeals' conditional grant of mandamus relief is not supported by the law and facts of this case.

## Argument

### DOES *DAVENPORT V. GARCIA* CONTROL CRIMINAL GAG ORDERS?

The Court has raised the question whether the Texas Supreme Court's holding in *Davenport*, 834 S.W.2d 4 applies to criminal gag orders. Without a definitive standard from this Court, the lower courts of this state have used *Davenport* as a template for analyzing criminal gag orders, but the integral shortcomings of *Davenport* make it inappropriate for criminal cases.

### *DAVENPORT* FAILS TO CONSIDER COMPETING CONSTITUTIONAL GUARANTEES

The sole issue the Texas Supreme Court addressed in *Davenport* was "whether the court's gag orders violate the guarantee of free expression contained in article I, section 8 of the Texas Constitution, which provides in pertinent part:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege...."

1

*Id*. at 7.

As a civil decision, *Davenport* takes no account of issues that differentiate civil cases from criminal cases. *Davenport* makes no attempt to balance conflicts between free speech rights protected under article I, section 8 and the trial rights of an accused recognized under the Sixth Amendment and article I, section 10 of the Texas Constitution.

A courtroom is a forum for finding truth. To reach that goal, a millennium of Anglo-American law has established proper manners and means for getting at the truth. Those manners and means are explicitly stated in the rules of evidence and procedure. Primarily, only relevant evidence is to be admitted. *Tex. R. Evid. 402*. Even if relevant, evidence can be excluded if it is overly prejudicial. *Tex. R. Evid. 403*. Certain evidence may be admitted for only a limited purpose. *Tex. R. Evid. 105*. Some types of relevant evidence may be kept out entirely. *See, e.g. Tex. R. Evid. 404, Tex. R. Evid. 802*. When evidence is relevant and admissible, its sponsor is subject to cross-examination and impeachment. If a witness provides false testimony, they face criminal punishment. *Tex. Penal Code, Ch. 37*. Outside the courtroom speech is free from constraint, regardless of its relevance, prejudicial bias or truth. In short, justice requires that speech in the courtroom be subject to certain limits and controls. Because the pursuit of justice is paramount in a criminal trial court, the judges of those courts have the duty not only of assuring that the rules are followed inside the courtroom, but also the affirmative constitutional duty to minimize the

effects of prejudicial pretrial publicity. *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368 (1979).

None of these factors as they apply in a criminal context are taken into account in the *Davenport* decision. Specifically, the trial rights of a criminal accused are absent from the equation. In *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), the United States Supreme Court recognized the distinction between a restriction on the press and a restriction on the litigants to a case:

> We think that the quoted statements from our opinions in *In re Sawyer* and *Sheppard v. Maxwell*, rather plainly indicate that the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press in *Nebraska Press Assn.* and the cases which preceded it. Lawyers representing clients in pending cases are key participants in the criminal justice system, and the State may demand some adherence to the precepts of that system in regulating their speech as well as their conduct.

*Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074 (1991)(internal citations omitted). Also, the United States Supreme Court recognized in *Sheppard* that it is incumbent on the court to limit prejudicial outside interferences from influencing the fairness of a criminal trial:

> The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel

3

and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures.

*Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966).

### *DAVENPORT* LIMITS ITSELF TO CONSIDERATIONS OF TEXAS LAW

In considering only the requirements of Texas law, the shortcomings of *Davenport* become particularly glaring in the context of criminal cases. Without even referencing Sixth Amendment requirements, Justice Hecht was critical of the majority in not consulting federal precedent in reaching its decision:

> The second difficulty with the Court's view that we should define fundamental constitutional rights without interference from outside the state is that it is premised on a one-dimensional view of those rights which is rarely accurate. If relator were constitutionally entitled to say whatever she pleased, this would be an easy case. But her right to speak freely is not absolute, under either the First Amendment or article I, section 8. In this case, relator's right conflicts with the district court's interest in protecting minor litigants, and the issue is whether the district court's interest warrants the restriction imposed on relator's right. This tension among competing rights and interests gives constitutional construction a multi-dimensional aspect. Thus, the Court's view that federal constitutional rights, which states cannot diminish, are a "federal safety net" is overly simplistic. Federal constitutional construction does not merely set minimum standards for protected rights which the states are free to increase; it strikes a balance among competing rights and interests that is itself of constitutional significance. While states have more latitude in adjusting this balance than they do in reducing guaranteed protections, that latitude is not unlimited. State courts are not free

from federal constitutional considerations in determining fundamental rights. The delicate balance among those rights and other interests must also be maintained.

*Davenport*, 834 S.W.2d 4.

The briefs submitted in this case overwhelmingly rely on federal case law to analyze the questions posed by the Court. The three Texas decisions primarily cited are *In re Graves*, 217 S.W.3d 744 (Tex. App.—Waco 2007); *In re Houston Chronicle Pub. Co.*, 64 S.W.3d 103 (Tex. App.—Houston [14th Dist.] 2001); and *In re Benton*, 238 S.W.3d 587 (Tex. App.—Houston [14th Dist.] 2007). The *Benton* decision draws deeply from federal opinions in analyzing the propriety of gag orders, citing primarily to *United States v. Carmichael*, 326 F. Supp. 2d 1267 (M.D. Ala. 2004); *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000); and *Gentile*, 501 U.S. at 1054. The *Houston Chronicle* decision also placed a strong emphasis on federal interpretation, citing to *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978); and *Pell v. Procunier*, 417 U.S. 817 (1974). While not directly reliant on federal interpretations, the *Graves* decision takes pains to analyze and distinguish *Houston Chronicle*, which did have a significant federal reliance.

There is a limited body of interpretive case law on Texas criminal gag orders. The competing standards addressed in the briefs filed in this case are all based on federal cases. It would be a practical impossibility for this Court to attempt analysis of the question without reference to federal

interpretations, much less to possibly craft a new standard.  This in itself is a powerful reason to abandon *Davenport* and its progeny.

**FINDINGS SUFFICIENT TO SUPPORT A GAG ORDER**

Because *Davenport* considered only free speech rights, violation of its proscriptions has resulted in an all-or-nothing approach which is dangerous in a criminal context. Presuming that the primary purpose of a criminal gag order is to balance free speech rights against the constitutional rights of the accused, as opposed to merely minimizing the effects of pretrial publicity on a civil trial, the *Davenport* approach provides for no middle ground range of reasonableness wherein this end may be accomplished.

*Davenport* held that:

> The first requirement of our standard advances from the prior holdings of Texas courts that only an imminent, severe harm can justify prior restraint, and in the context of gag orders, that harm must be to the judicial process.  (internal citations omitted)  The mandate that findings of irreparable harm be made is based on our state constitutional preference for post-speech remedies.  Only when no such meaningful remedies exist will prior restraints be tolerated in this context.

*Davenport*, 834 S.W.2d 4.

In *Graves*, the Waco Court of Appeals did not hold that the circumstances of the case would not support the issuance of a gag order. "Rather, we hold that (1) there is no evidence in the record supporting the findings necessary for a gag order, (2) the limited record in this case does

not support Respondent's decision to take judicial notice regarding pretrial publicity, and (3) Respondent's order does not contain sufficiently specific findings for such an order." *Graves* at 753. The result was that the gag order was killed by the granting of mandamus. Justice Gray took exception to this "no middle ground" approach, saying "I would expect a delayed imposition of the holding to allow the trial court the opportunity to meet the requirements of their opinion before a fair trial for Graves is put in jeopardy. It is especially troubling that the majority would impose so restrictive of a schedule without the opportunity to cure the perceived problems when the right of the defendant to a fair trial is what weighs in the balance." *Graves* at 753-754 (Gray, C.J., dissenting).

The *Graves* decision indicates that the problem with upholding the gag order lay not so much in the lack of specific findings as the lack of the record to support such findings. Justice Gray's dissent certainly suggests a belief on his part that the record did contain sufficient facts to support the kind of findings required under *Davenport*. But since *Davenport* considered only free speech rights and not the balance between competing constitutional rights, the *Graves* court was compelled to kill the trial court's gag order.

It has been argued by Respondent and his amici that the trial court's findings in the instant case were insufficient to support a gag order. These are the findings the court made on this point:

"This Court takes judicial notice of

1) the unusually emotional nature of the issues involved in this case;
2) the extensive local and national media coverage this case has already generated; and
3) the various and numerous media interviews with counsel for the parties that have been published and broadcast by local and national media.

The Court FINDS that counsels' willingness to give interviews to the media would only serve to increase the volume of pretrial publicity.

The Court FURTHER FINDS that if counsel for the parties continue to grant interviews to the media, the pre-trial publicity will interfere with the defendant's right to a fair trial by an impartial jury.

The Court FURTHER FINDS that no less restrictive alternative means exists to treat the specific threat to the judicial process generated by this pre-trial publicity.

The Court FURTHER FINDS that an order restricting extra-judicial commentary by counsel for the parties is necessary to preserve all venue options and a delay in the proceedings would not lessen the publicity generated by this case." *Relator's Appendix 4.*

It is clear from these findings that the trial court perceived that the pre-trial publicity and the public statements of the parties were highly prejudicial and posed a threat to the proceedings. These matters are apparent from the record. The State presented a news report quoting Respondent's counsel's complaint that, "The Waco Police have repeatedly

8

given the public contradictory information about the events at Twin Peaks." *Relator's Appendix 3, Exhibit B*. In addressing the court, Respondent's counsel complained that "the State has already poisoned the well …. I couldn't even count on two hands, the amount of press conferences he gave purporting to describe what happened, calling them biker gangs, when he knows they're motorcycle clubs." (RR I – 27). In briefings and motions made in this case, Respondent and his amici have continued to excoriate the State for making supposedly prejudicial statements. Aside from the record, it is appropriate for a trial court to take judicial notice of prejudicial press coverage, as the Waco Court of Appeals acknowledged in *Graves*. *Graves* at 751.

It appears that the difficulty the Waco Court of Appeals has with the gag order in the instant case is the same one it had in *Graves*, a lack of formulaic "magical words" in the trial court's findings. This is a result of the draconian remedy required under *Davenport*, which looks only to free speech rights and fails to take into consideration the threat posed to an accused's trial rights.

**LEAST RESTRICTIVE MEANS**

The case at bar is about a shoot-out where nine people died. This happened during the Sunday lunch hour in the heart of one of the state's major cities. One hundred seventy-seven people have been arrested. Surrounding these events are reporting and editorial comment by traditional and non-traditional news sources and social media, complete

with audio and visual content, available instantaneously to anyone in the world who has a computer or a cell phone.

Balanced against these factors are the courts' affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. *Gannett Co.*, 443 U.S. 368. This duty extends not only to Respondent, but to all 176 co-defendants. *Brown*, 218 F.3d at 424. As the State has pointed out, a bare minimum of 5,664 panelists would be required to conduct *voir dire* for the one hundred seventy-seven potential trials in this case. Meeting this challenge, while maintaining McLennan County as a venue option, will be a daunting and costly task not only for the court system but for the entire Waco area community.

The United States Supreme Court has determined that before a trial court issues a gag order, it must first determine whether other precautionary steps will suffice. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976). Possible alternative precautions, including change of venue, jury sequestration, "searching" *voir dire* and "emphatic" jury instructions were set out in *Sheppard*, 384 U.S. 333. Under the circumstances of Twin Peaks, only the willfully blind cannot see why these lesser options are not reasonable means to protect the trial rights of all one hundred seventy-seven accused.

**OPTIONS PROPOSED BY THE DEFENSE BAR**

Throughout this case Respondent's counsel has complained mightily about public statements made by State agents. But rather than propose any

one of the less-restrictive means analyzed under *Sheppard*, the defense bar's solution is to allow all the parties to say whatever they want. *Respondent's Brief, p. 4*; *Amicus Brief of Robert Callahan, p. 6*; *Amicus Brief of Texas Criminal Defense Lawyers Association, p. 6*. It is even proposed that defense counsel has an affirmative duty under the Sixth Amendment to try a client's case in the court of public opinion. *Amicus Brief of Texas Criminal Defense Lawyers Association, p. 3*. Adding a further twist, Respondent has proposed that this Court lift its stay of the gag order due to a perceived violation by the Relator.

The solution proposed by the defense bar is no solution at all. In fact it is the opposite. It proposes that when the trial court determines that prejudicial pre-trial publicity threatens the rights of the parties and the judicial process, that it do nothing, allow the problem to build, and abdicate its constitutional responsibility to minimize the effects of the prejudicial pretrial publicity.

The defense bar even advances the idea that the issuing of a gag order should be dependent on the defense lawyer's preferences. *Amicus Brief of Texas Criminal Defense Lawyers Association, p. 5*. Again, this idea asks a trial court to abdicate its constitutional responsibilities. And not only that, it ignores the State's interest in a fair trial. *Tex. Code Crim. Proc., Art. 44.01*; *State v. Redus*, 445 S.W.3d 151, 153 (Tex. Crim. App. 2014).

## Conclusion

Gag orders in criminal cases, while rare, are appropriate measures that trial courts may use to ensure a fair trial. In an atmosphere of instantaneous media saturation, the threat of prejudicial pretrial publicity in high-profile cases is real. It is in the interest of ensuring fair trials that this Court establish workable standards for gag orders which takes into account not only the rights of free speech and a free press, but also balances those rights with the constitutionally guaranteed trial rights of the accused.

## Prayer

For the foregoing reasons, Amicus prays that this Honorable Court affirm the trial court's issuance of the gag order in this case, issue a Writ of Mandamus directing the Tenth Court of Appeals to vacate the conditional Writ of Mandamus previously entered by that Court, and prays for such other and further relief as may be provided by law.

Respectfully Submitted:
**RENE M. PENA**

/s/ Rene M. Pena
**RENE M. PENA**
District Attorney
81st Judicial District
1327 Third St.
Floresville, Texas 78114
[Tel.] (830) 393-2200
[Fax] (830) 393-2205
[Email]

renepena@81stda.org
State Bar No. 00792752

## Certificate of Compliance

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 4,487 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

## Certificate of Service

I certify that I caused to be served a true and correct copy of this Petition by electronic service or email or hand delivery on:

Relator, Abelino 'Abel' Reyna, McLennan County Criminal District Attorney at abel.reyna@co.mclennan.tx.us.

Respondent, 10th Court of Appeals Waco, Texas by hand delivery per request of Chief Justice Tom Gray

Attorney, F. Clint Broden, for Real Party in Interest, Matthew Clendennen at clint@texascrimlaw.com

Real Party in Interest, Judge Matt Johnson, 54th District Court, McLennan County Texas at matt.johnson@co.mclennan.tx.us

DATE: 10/6/15                                        /S/ RENE M. PENA
                                                     RENE M. PENA