

**IN THE
TENTH COURT OF APPEALS**

_____

**No. 10-17-00390-CR**

**IN RE MATTHEW ALAN CLENDENNEN**

_____

**Original Proceeding**

---

**MEMORANDUM  OPINION**

---

Relator Matthew Alan Clendennen seeks a writ of mandamus compelling Respondent, the Honorable Doug Shaver, sitting as judge of the 54th District Court of McLennan County, to vacate a gag order that Respondent signed on October 24, 2017. We requested a response to Clendennen's petition for writ of mandamus.  The State replied that it would not be filing a response.  We will conditionally grant the requested relief.

A gag order was initially signed in the underlying case on June 30, 2015. Clendennen sought mandamus relief in this Court.  Based on this Court's opinion in *In re Graves*, 217 S.W.3d 744 (Tex. App.—Waco 2007, orig. proceeding), and the authorities cited therein, we concluded that the trial court abused its discretion by issuing the June

30, 2015 gag order and conditionally granted Clendennen's petition for writ of mandamus. *See In re Clendennen*, No. 10-15-00235-CR, 2015 WL 4730554, at \*1 (Tex. App.—Waco Aug. 7, 2015, orig. proceeding) (mem. op., not designated for publication), *mand. denied sub nom. State ex rel. Reyna v. Court of Appeals for Tenth Dist.*, No. WR-83,719-01, 2016 WL 9000796 (Tex. Jun. 15, 2016) (not designated for publication). Accordingly, the June 30, 2015 gag order was vacated.

Respondent signed another gag order in the underlying case on October 24, 2017. The October 24, 2017 gag order contains only minor differences from the June 30, 2015 gag order. The substantive differences are as follows:

1. In the June 30, 2015 gag order, the trial court took judicial notice of (1) "the unusually emotional nature of the issues involved in this case," (2) "the extensive local and national media coverage this case has already generated," and (3) "the various and numerous media interviews with counsel for the parties that have been published and broadcast by local and national media." In the October 24, 2017 gag order, the trial court took judicial notice of (1) through (3), as well as "the filings of counsel."

2. In the June 30, 2015 gag order, the trial court made the finding that "counsels' willingness to give interviews to the media would only serve to increase the volume of pre-trial publicity." In the October 24, 2017 gag order, the trial court made the finding that "counsel's willingness to give interviews to the media *and make statements calculated to attract media attention* would only serve to increase the volume of pre-trial publicity." [Emphasis added.]

3. In the June 30, 2015 gag order, the trial court made the finding that "no less restrictive alternative means exists to treat the specific threat to the judicial process generated by this pre-trial publicity." In the October 24, 2017 gag order, the trial court made the same finding but added:

   > [T]he facts and circumstances regarding the Defendant's pending motions have been heavily reported by local media, and jury selection is scheduled to begin with the distribution of juror questionnaires on Friday, October 27th. While normally an effective tool at screening for the effect of pre-trial publicity, the

possibility of ongoing exposure of the venire to media coverage of the proceedings after the distribution and completion of these questionnaires is high. A venire panel questioned on October 9, 2017 in a related case resulted in numerous strikes for cause due to pretrial publicity.

4. In the June 30, 2015 gag order, the trial court ordered: "All attorneys, their staffs, and law enforcement officers involved in this case shall not discuss this case with the media." In the October 24, 2017 gag order, the trial court ordered: "All attorneys, their staffs, and law enforcement officers involved in this case shall not discuss this case with the media, *except as those discussions pertain to scheduling matters*." [Emphasis added.]

Clendennen argues that the October 24, 2017 gag order violates (1) the law of the case; (2) article I, section 8 of the Texas Constitution; and (3) the First Amendment to the U.S. Constitution. For the reasons discussed below, we believe that the October 24, 2017 gag order violates article I, section 8 of the Texas Constitution.

In *Davenport v. Garcia*, 834 S.W.2d 4 (Tex. 1992) (orig. proceeding), the supreme court held that the gag order in that case was an unconstitutional prior restraint on the "free expression" guarantee of article I, section 8 of the Texas Constitution and developed the following test to determine whether a prior restraint on expression violates that provision:

> Since the dimensions of our constitutionally guaranteed liberties are continually evolving, today we build on our prior decisions by affirming that a prior restraint on expression is presumptively unconstitutional. With this concept in mind, we adopt the following test: a gag order in civil judicial proceedings will withstand constitutional scrutiny only where there are specific findings supported by evidence that (1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm.

*Id.* at 10; *see* TEX. CONST. art. I, § 8. Although *Davenport* involved a gag order in a civil case, it has been applied to similar orders in criminal cases, including the gag order in *Graves*. *See Graves*, 217 S.W.3d at 749.

Clendennen argues that the October 24, 2017 gag order fails the *Davenport* test because "Respondent made no true 'specific findings' as to whether pretrial publicity would truly impact the right to a fair and impartial jury and whether it was the [least] restrictive means to prevent any harm." We agree. Beyond mentioning media interviews with counsel, Respondent has failed to make "specific findings" detailing the nature or extent of the pretrial publicity. Respondent has also failed to make "specific findings" detailing how the pretrial publicity will impact the right to a fair and impartial jury and why such harm cannot be sufficiently cured by remedial action.

It appears that Respondent attempted to address how the pretrial publicity will impact the right to a fair and impartial jury and why such harm cannot be sufficiently cured by remedial action by including in the order that the distribution of juror questionnaires is normally an effective tool at screening for the effect of pretrial publicity but that the possibility of ongoing exposure of the venire to media coverage of the proceedings is high and that the venire panel questioned in a related case resulted in numerous strikes for cause due to pretrial publicity. But the gag order does not indicate that the pretrial publicity in the related case resulted in the inability to seat a fair and impartial jury. Instead, the gag order implies that, even though some potential jurors were stricken for cause, a fair and impartial jury was able to be seated.

For these reasons, we cannot conclude that Respondent has made "specific findings" that the pretrial publicity will cause "imminent and irreparable harm to the judicial process" or that the gag order "represents the least restrictive means to prevent that harm." *See Davenport*, 834 S.W.2d at 10-11; *Graves*, 217 S.W.3d at 752-53. Accordingly, we hold that the October 24, 2017 gag order violates article I, section 8 of the Texas Constitution. *See Davenport*, 834 S.W.2d at 10; *Graves*, 217 S.W.3d at 753. We need not address Clendennen's law-of-the-case or First Amendment claims.

We therefore conditionally grant Clendennen's "Amended Emergency Petition for Writ of Mandamus." A writ will issue only if Respondent fails to vacate his gag order issued on October 24, 2017, and to notify this Court in writing that he has done so within seven days from the date of this opinion. Clendennen's "Amended Motion for Stay of Gag Order or, in the Alternative, for Emergency Relief" and "Second Motion for Stay of Gag Order" are dismissed as moot.


                                        REX D. DAVIS
                                        Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
        (Chief Justice Gray concurring with a note)*
Petition granted
Opinion delivered and filed March 21, 2018
Do not publish
[OT06]

\*     (Chief Justice Gray concurs in the Court's judgment to the extent it determines the trial court erred in rendering the Gag Order. A separate opinion will not issue. He notes, however, that there is nothing substantively different with this gag order than the one previously rejected and thus rejects this one with equal dispatch. *See Clendennen I* cited therein.)

